**BERRY APPLEMAN & LEIDEN**
Jeff Joseph (CO Bar No. 28695) (*pro hac vice pending*)
2400 N. Glenville Drive
Richardson, Texas 75082
(720) 273-4647
Email:  jjoseph@bal.com

*Attorney for Plaintiff*
Student Doe #1

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Student DOE #1 | Case No. |
|      Plaintiff, | |
|      v. | **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Donald J. TRUMP, in his official capacity, President of the United States of America; | **POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |
| John TSOUKARIS, in his official capacity as ICE Enforcement and Removal Operations New Jersey Field Office Director; | **HEARING REQUESTED** |
| Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and | Request for Declaratory and Injunctive Relief |
| Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; | |
|      Defendants. | |

## NOTICE OF MOTION

1.     Pursuant to Local Civ. Rule 10.1, Plaintiff declares that Student Doe #1 is represented by undersigned counsel and can be reached at Jeff Joseph, Berry Appleman & Leiden, 2400 N. Glenville Drive, Richardson, Texas, 75082;  Defendant Donald Trump, President of the United States resides and works from the White House, 1600 Pennsylvania Avenue NW, Washington, D.C. 20500; Defendant John Tsoukaris, Field Office Director, ICE Enforcement and Removal Operations, New Jersey Field Office works at 970 Broad Street, 11th Floor, Newark, New Jersey, 07102;  Defendant, Todd Lyons, Acting Director, Immigration and Customs Enforcement, works at 500 12th Street SW, Washington D.C. 20024; Defendant, Kristi Noem, Secretary of Homeland Security, works at 2707 Martin Luther King Jr. Ave. SE, Washington D.C. 20528-0525.

2.     Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Civ. Rule 65.1, Plaintiff hereby moves this Court for an order enjoining Defendants Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), John Tsoukaris, in his official capacity as Field Office Director, ICE Enforcement and Removal Operations New Jersey Field Office, and Donald J. Trump in his official capacity as President of the United States of America from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their Student and Exchange Visitor Information System ("SEVIS") record, or the potential unlawful revocation of their F-1 visa. Such enforcement action includes: detaining Plaintiff pending these proceedings, transferring

Plaintiff away from the jurisdiction of this District pending these proceedings and removing Plaintiff from the United States pending these proceedings.

3. Plaintiff, through this temporary restraining order, also seeks prohibitive injunctive relief restoring the Plaintiff to the status quo as it existed prior to the unlawful termination of their SEVIS status, and declaring that the Defendants continued action of terminating their SEVIS status be found unlawful and without legal force to deprive Plaintiff of their valid student nonimmigrant status and work authorization during these proceedings. Plaintiff further seeks to maintain the status quo in their case whereby they continue to be considered in status, so that they may continue to work pursuant to their valid F-1 student visa (and their underlying valid I-20) which existed immediately prior to Defendants' unlawful actions, and also that they may seek the concomitant benefits of that valid status such as the legal eligibility to extend Optional Practical Training, Curricular Practical Training, or a change of status to another non-immigrant visa status, while this litigation remains pending.

4. Furthermore, through the issuance of a subsequent preliminary injunction, Plaintiff seeks mandatory injunctive relief, in addition to the relief described above, but also to vacate and set aside the termination of their SEVIS record, and to reinstate or reissue their I-20 form.

5. The reasons in support of this Motion are set forth in the accompanying Memorandum of Points and Authorities. This Motion is based on the concurrently filed Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act and the Declaratory Judgment Act, as well as the declarations of Plaintiff and undersigned counsel. As set forth in the Points and Authorities in support of this Motion, Plaintiff

raises that they warrant an emergency temporary restraining order due to their weighty liberty interests under the Due Process Clause of the Fifth Amendment in remedying the unlawful revocation of their SEVIS status, to preserve their status quo ability to pursue their education and relevant employment opportunities pursuant to that education, and to prevent against any further enforcement action by the government stemming from these unlawful SEVIS revocations.

6.      WHEREFORE, Plaintiff prays that this Court grant their request for a temporary restraining order enjoining Defendants from detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings, as well as an order that Defendants' revocation of Plaintiff's SEVIS account be declared unlawful and without legal force, which is necessary to maintain the status quo in their case such that they may continue to work pursuant to their F-1 student status while this litigation remains pending. The only way to ensure that Plaintiff is not unlawfully detained, transferred, or removed in violation of their due process rights is an ex-parte temporary restraining order from this Court.

Dated 04/17/2025                   Respectfully Submitted:

/s/ Jeff Joseph
Jeff Joseph
Berry Appleman & Leiden
2400 N. Glenville Drive
Richardson, TX  75082
(720) 273-4647
jeff@immigrationissues.com
*pro hac vice pending*

iii

Notice of Motion for Ex Parte TRO/PI

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS AND CASE................................................................4

III.  LEGAL STANDARD.............................................................................................6

IV.   ARGUMENT ..........................................................................................................7

      A. PLAINTIFF WARRANTS A TEMPORARY RESTRAINING ORDER ...............7

          1.  Plaintiff is Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiff's Due Process Rights ..........................................................7

          2.  Plaintiff will Suffer Irreparable Harm Absent Injunctive Relief ...............14

          3.  The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order.......................................................17

          4.  Plaintiff Has Complied with the Requirements of Rule 65, Fed.R.Civ.P………………………………………………………..19

V.    CONCLUSION AND PRAYER FOR RELIEF ................................................20

## TABLE OF AUTHORITIES

**Cases**

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ................................. 23
*Armstrong v. Manzo*, 380 U.S. 545 (1965) ................................................................. 18
*ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) ............................................ 18
*Baldwin v. Hale*, 68 U.S. 223 (1864) ......................................................................... 18
*Borden v. United States*, 593 U.S. 420 (2021)............................................................ 11
*Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014) ........................................................ 18
*Fuentes v. Shevin*, 407 U.S. 67 (1972)....................................................................... 18
*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*,
    415 U.S. 423 (1974) .............................................................................................. 8
*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017)................................................. 23
*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d, 721 (7th Cir. 2009) ....... 8
*Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172 (3d Cir. .................. 11, 12, 16
*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) ....................................................... 23
*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................. 18
*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)..................................................... 23
*Preminger v. Principi*, 422 F.3d 815  (9th Cir. 2005).................................................. 23
*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d. Cir. 2017).......................................... 7
*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ...................................... 23
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................ 7
*Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) ........................................................... 22

**Statutes**

5 U.S.C. § 706(2)(A)................................................................................................. 16, 17
5 U.S.C. § 706(2)(B) ................................................................................................. 17
8 U.S.C. § 1182(d)(3) ............................................................................................... 11
8 U.S.C. § 1201(i)..................................................................................................... 12
8 U.S.C. § 1227(a)(1)(B) .......................................................................................... 12
8 U.S.C. § 1227(a)(1)(C)(i) ...................................................................................... 12
8 U.S.C. § 1227(a)(4)(C)(i) ...................................................................................... 12
8 U.S.C. § 1252(a)(1)................................................................................................ 12
8 U.S.C.§ 1101(a)(15)(F)(i) ..................................................................................... 9
USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001 .................................... 9

**Other Authorities**

Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)........................ 12
ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010) .............................. 11

**Rules**

Fed. R. Civ. P. 65(b) ................................................................................................. 8

**Regulations**

8 C.F.R. § 1003.18(d)(ii)(B)....................................................................................... 12
8 C.F.R. § 103.8 ........................................................................................................ 14
8 C.F.R. § 214.1(d) ............................................................................................... 11, 12, 17
8 C.F.R. § 214.1(g) ................................................................................................. 10, 17
8 C.F.R. § 214.2(f) ................................................................................................. 9, 10, 17
8 C.F.R. § 214.3(g)(2).............................................................................................. 10
8 C.F.R. § 274a.14 ................................................................................................... 13
8 C.F.R. § 274a.14(b)............................................................................................... 13
8 C.F.R. §§ 214.1(e).............................................................................................. 10, 17

8 C.F.R. §§ 214.1(e)–(g)..................................................................................................................... 10

## I. <u>INTRODUCTION</u>

Plaintiff, Student Doe #1, by and through undersigned counsel, hereby files this motion for a temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their SEVIS record or the potential unlawful revocation of their F-1 visa. Such enforcement action includes detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings. Plaintiff also seeks prohibitive injunctive relief restoring the Plaintiff to the status quo as it existed prior to the unlawful termination of their SEVIS status, and an order declaring that the Defendants actions of terminating their SEVIS status is unlawful and without legal force to deprive Plaintiff of their valid student nonimmigrant status and work authorization during these proceedings. Plaintiff further seeks to maintain the status quo in their case whereby they continue to be considered in valid F-1 visa status, so that they may continue to work pursuant to their valid F-1 student status (and their underlying valid I-20) which existed immediately prior to Defendants' unlawful actions, and also that they may seek the concomitant benefits of that valid status such as the legal eligibility to extend Optional Practical Training, Curricular Practical Training, or a change of status to another non-immigrant visa status, while this litigation remains pending.

Plaintiff is a graduate of a New York based University, having obtained their Master's degree in lawful F-1 visa status. Prior to being laid off from their employment due to their SEVIS termination, Plaintiff was working for an employer pursuant to their valid and unexpired Optional Practical Training work authorization. At all times they are and were maintaining their

status by complying with all the requirements of their nonimmigrant student visa, and the requirements of the educational institution in which they are enrolled. They are one of approximately 4,700 F-1 students nationwide whose SEVIS records, like that of Plaintiff here, have been abruptly and unlawfully terminated by the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") since approximately March 25, 2025, in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis.[1]

There are two distinct but related problems with ICE's termination of the SEVIS record. First, the grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record, and neither do the underlying facts referred to by ICE as they do not amount to any violation of the student's lawful status. Second, ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked, ICE is not authorized to terminate Plaintiff's F-1 student status. Here, Plaintiff has been in full compliance with the terms of their F-1 status and has not engaged in any conduct that would warrant termination of their status.

Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiff, into abandoning their studies and post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. For example, on March 5, 2025, the Department of State ("DOS") informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently

---

[1] Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing,* Bloomberg, (April 15, 2015) available at: https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing

Notice of Motion for Ex Parte TRO/PI

terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on

X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia

University terrorist sympathizers use the CBP Home app to self deport."[3]

      Other students who have had their F-1 visa revoked and/or SEVIS status terminated have

been arrested and detained, sometimes before even learning their visa had been revoked at all.[4]

On information and belief, there is a policy and practice of transferring these individuals far from

their homes, school, and communities, by physically moving them to detention centers in Texas

and Louisiana once detained. There have been several high-profile cases of immigration arrests

in New York, Washington D.C., and Boston, in which the government quickly moved the

detainees across state lines to detention facilities in Louisiana and Texas.[5] On information and

belief, there are several additional cases of students who have been arrested since their visas

were revoked who were initially detained near where they lived, then moved far from their

home, school/employer and community, to a detention facility in Texas or Louisiana the day

before or day of their bond hearing in immigration court.

      If ICE believes a student is deportable for having violated their visa status, or any other

lawful reason, it has the authority to initiate removal proceedings and make its case in

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.

[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488

[4] *See, e.g.,* Bea Lunardini, *UF International Student Detained By Immigration Agents Now Back in Columbia*, WUFT/PBS/NPR, April 9, 2025, *available at* https://www.wuft.org/fresh-take-florida/2025-04-09/uf-international-student-detained-by-immigration-agents-now-b ack-in-colombia

[5] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html

Notice of Motion for Ex Parte TRO/PI

immigration court. ICE cannot, however, misuse SEVIS to circumvent the law, strip students of status, deprive them of jobs and livelihoods, and drive them out of the country without process. ICE similarly cannot engage in retaliatory arrests and transfers – without legal basis if the SEVIS termination was unlawful -- to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

Plaintiff meets the standard for a temporary restraining order. They will suffer immediate and irreparable harm absent an order from this Court enjoining Defendants from taking further unlawful action stemming from the unlawful revocation of their SEVIS record—including arrest and detention, being transferred out of the jurisdiction of this District, and removal from the country—during the pendency of these proceedings. Since holding federal agencies accountable to constitutional demands is in the public interest, the balance of equities and public interest also tips strongly in Plaintiff's favor.

## II.      STATEMENT OF FACTS AND CASE

As mentioned above, Plaintiff is in lawful F-1 visa status by complying with all the requirements of their nonimmigrant student visa, and the requirements of the educational institution in which they are enrolled. Since April 9, 2025, their SEVIS record was abruptly and unlawfully terminated by ICE without any notice or basis for the termination.  Additionally, Plaintiff was able to log into the Department of State website and ascertain that her visa was also revoked effective April 9, 2025.

SEVIS is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses. On approximately April 9, 2025, SEVP terminated Plaintiff's SEVIS record and marked it as "Other – Individual identified in criminal records check and/or has had their visa

revoked.  SEVIS record has been terminated" with no citation to any provision of law that indicates a basis for not maintaining status, or other facts that indicate a lack of status, or an actual violation of their status. Although Plaintiff has had contact with law enforcement in New Jersey, they lack any criminal conviction or conduct that violates the terms of their F-1 status or otherwise renders them deportable.

Plaintiff is residing in the State of New Jersey, and is currently working for an employer as a Risk Analyst on Optional Practical Training after graduating with a Master's Degree from a New York based University, which is authorized through their F-1 student status.

Plaintiff first came to study in the United States on a student visa in 2021 when they arrived in New York to begin pursuing their master's degree at a college or university located in New York.  Subsequent to starting their studies, the Plaintiff settled in New Jersey and has resided in New Jersey since that time.

At all times, Plaintiff has complied with all the requirements of their visa and of the educational institution in which they are enrolled.

Plaintiff's only criminal history was a for a minor New Jersey municipal disorderly persons offense.  Although the Plaintiff was charged with the disorderly persons conduct in a municipal court in Hudson County, New Jersey, they were never convicted because the prosecutor dismissed the criminal complaint. The dismissed disorderly person offense does not render Plaintiff inadmissible to or deportable from the United States.

As Plaintiff has been approaching the final months of their Optional Practical Training, they have been actively pursuing a change of status to H-1B and or other immigration opportunities in the United States.  Prior to the SEVIS termination, they had a job with a

company that was willing to sponsor them for the H-1B lottery as well as other possible immigration avenues.  However, given the SEVIS termination, Plaintiff was terminated from the job and the employer has paused all immigration activity or sponsorship in their case.

As stated above, ICE's en masse SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, Plaintiff's school was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status.

Plaintiff is also in a long-term relationship and living with a lawful permanent resident of the United States.  Since they received notice of their SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. They are facing severe economic pressures from the loss of employment and the inability to seek alternative employment.  They are terrified to leave the United States and yet feel trapped within the United States.  They are unsure of what will happen to them, and they fear the effect incarceration or deportation would have on their mental health as well as the well-being of their partner and their future plans together.

Intervention from this Court is therefore required to ensure that Plaintiff does not continue to suffer irreparable harm.

## III. LEGAL STANDARD

Plaintiff is entitled to a temporary restraining order where they establish that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  The Third Circuit has held that a movant for preliminary equitable relief must meet the threshold for the two most critical factors, i.e. that there is a substantial likelihood of success on the merits, and that it is more likely than not

that the Plaintiff will suffer irreparable harm absent the preliminary relief. *Reilly v. City of Harrisburg,* 858 F.3d 173, 179 (3d. Cir. 2017). In establishing the likelihood of success on the merits, the Plaintiff must make a showing significantly more than a negligible chance but not more likely than not. *Id. citing others.* "'How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id. citing Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.,* 582 F.3d, 721, 725 (7th Cir. 2009). As set forth in more detail below, Plaintiff overwhelmingly satisfies both standards.

## IV. <u>ARGUMENT</u>

### A. PLAINTIFF WARRANTS A TEMPORARY RESTRAINING ORDER

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in the absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). As explained above, Plaintiff's SEVIS record was abruptly and unlawfully terminated by ICE in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis. Given the actions related to similarly situated international students, Plaintiff is at serious and immediate risk of further unlawful enforcement action by ICE—including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States. The unlawful revocation of their SEVIS record without notice or opportunity to respond, and without legal basis, clearly violated Plaintiff's due process rights and was otherwise

8

arbitrary and capricious. Plaintiff has already suffered irreparable injury to their well-being and their life as a graduate student in the United States.

### 1. Plaintiff is Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiff's Due Process Rights

Plaintiff is likely to succeed on their claim that, by abruptly revoking Plaintiff's SEVIS record without any lawful or valid basis, and without any notice or an opportunity to respond, Defendants acted in violation of their own regulations, arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), and further violated Plaintiff's procedural due process rights.

A nonimmigrant visa printed in a passport provides a basis for a noncitizen's admissibility into the United States but does not control their continued lawful stay in the United States after they are admitted. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once a holder of an F-1 visa is admitted in F-1 status, a student is granted permission to remain in the United States not for a fixed period time, as is the case for other nonimmigrant visa holders, but rather for the duration of status (annotated as D/S). That status endures (separate from the validity of the visa itself) as long as they continue to meet the requirements established by the regulations governing their visa classification at 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

To obtain an F-1 visa, the school at which the student will study issues a form I-20 to the student confirming their attendance and enrollment in the school, with an expected duration of study. Often, the form I-20 is updated as the student's circular progress is updated, but in

substance and duration. If there is a valid I-20 issued to the student by the school, then the student is considered to be maintaining their lawful status.

Before 2001, there was no centralized databased to track student visa holders in the United States, as it is not inherent to the legal ability of a student to maintain status. After 2001, Congress created the SEVIS system to track the status of nonimmigrant visa holders admitted for" duration of status."[6] SEVIS is a centralized database maintained by the SEVP within ICE, and it is used to manage information on nonimmigrant students and exchange visitors and to track their compliance with the terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.[7] SEVIS termination can only be based on a student's failure to maintain status.[8]

DHS regulations distinguish between two separate ways a student may fail to maintain status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or

---

[6] USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001.
[7] *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 16, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons
[8] *See id.*

being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

With respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Arrests that do not result in any conviction, and minor infractions or misdemeanor offenses, do not meet this regulatory threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[9]

Accordingly, the existence of an arrest (or even minor conviction) does not constitute a basis for SEVIS termination. Likewise, the revocation of a *visa* does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior

---

[9] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

Notice of Motion for Ex Parte TRO/PI

to the student's arrival to the United States, then a student may not enter the country, and the SEVIS record is terminated. However, the SEVIS record may not be terminated because of a visa revocation *after* a student has already been admitted into the United States, since status is not terminated by visa revocation, and the student is permitted to continue the authorized course of study.[10]

ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[11] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[12]

While a visa revocation *can* be charged as a ground of deportability in removal proceedings before an immigration judge, such alleged deportability can be contested in such proceedings.[13] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status.[14] Only when a final removal order is entered would an individual's status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds),

---

[10] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf
[11] *Id.*
[12] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation
[13] *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[14] 8 C.F.R. § 1003.18(d)(ii)(B).

or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status). Moreover, there is no provision for termination of SEVIS based on law enforcement contact.

The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[15] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.[16]

Additionally, SEVIS termination does not constitute termination of any work authorization that an F-1 student may have pursuant to Optional Practical Training. The regulations make clear that the sole relevant basis for the termination of a nonimmigrant's employment authorization is as set forth in 8 C.F.R. § 274a.14. Although 8 C.F.R. § 274a.14(a) sets forth various bases upon which employment authorization can be automatically revoked, none of them include the termination or closure of a foreign student's SEVIS record, nor the termination of their student status. 8 C.F.R. § 274a.14(b) permits employment authorization to be revoked if "Prior to the expiration date, when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown; or Upon a showing that the information contained in the application is not true and correct."

Even if the maintenance of the employment authorized Plaintiff student status was a condition upon which employment authorization was granted and has not been met or no longer exists, this is solely because of the unlawful actions of the Defendants, there is no good cause for

---

[15] *See Jie Fang v. Dir. United States Immig. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019); *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024).
[16] *See Fang*, 935 F.3d at 185

Notice of Motion for Ex Parte TRO/PI

such a revocation, and there has been no showing that the information contained in the

employment authorized Plaintiff's application was not true and correct.

Even if any of these grounds applied to the employment authorized Plaintiff, they cannot

be a basis for revocation of employment authorization unless the director "serve(s) written notice

of intent to revoke the employment authorization. The notice will cite the reasons indicating that

revocation is warranted. The alien will be granted a period of fifteen days from the date of

service of the notice within which to submit countervailing evidence." 8 C.F.R. § 274a.14(b).

8 C.F.R. § 103.8 provides for the following forms of service:

> Types of service--
> **(1)** Routine service. Routine service consists of mailing a copy by ordinary mail addressed to a person at his last known address.
> **(i)** Routine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address, or
> **(ii)** If so requested by a party, advising the party of such notice by electronic mail and posting the decision to the party's USCIS account.
> **(2)** Personal service. Personal service, which shall be performed by a Government employee, consists of any of the following, without priority or preference:
> **(i)** Delivery of a copy personally;
> **(ii)** Delivery of a copy at a person's dwelling house or usual place of abode by leaving it with some person of suitable age and discretion;
> **(iii)** Delivery of a copy at the office of an attorney or other person, including a corporation, by leaving it with a person in charge;
> **(iv)** Mailing a copy by certified or registered mail, return receipt requested, addressed to a person at his last known address; or
> **(v)** If so requested by a party, advising the party by electronic mail and posting the decision to the party's USCIS account.

The sole notice of the "termination" (or, more properly, purported revocation) of the employment authorized Plaintiffs' employment authorization was by the messages received as a result of the SEVIS termination.  No other notice was received that would comport with the regulations.

Significantly, the Defendants have taken the position under penalty of perjury in litigation in other districts on this issue that terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States, and that the statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record.[17] This is correct as a matter of law, of course, but ICE takes a different position in both the communications that went out to students as well as its own public-facing messaging on SEVIS itself.  For example, the Department of Homeland Security Website specifically states:

> When an F-1/M-1 SEVIS record is terminated, the following happens:
> - Student loses all on- and/or off-campus employment authorization.
> - Student cannot re-enter the United States on the terminated SEVIS record.
> - Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.[18]

Additionally, in a letter to Senator Grassley, ICE stated that the impact of a SEVIS termination is:

> SEVIS records serve as an indicator of a possible immigration status violation. SEVIS record terminations and cancellations are data entry actions in SEVIS that raise a flag indicating that an individual's status requires further investigation by the agency. An individual's SEVIS record can be terminated for a number of reasons, not all of which are negative. For instance, a student's

---

[17] Exhibit E, Affidavit of Andre Watson, *Deore v. Noem*, 2:25-cv-11038-SJM-DRG (E.D. Mich Southern Division) ECF No.14-3 at para. 22.

[18] Department of Homeland Security, Study in the States, *Effects of Termination* (last visited April 16, 2025) available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student

Notice of Motion for Ex Parte TRO/PI

> SEVIS record will be terminated if the individual changes status and is no longer a nonimmigrant student. A certified school's designated officials can also terminate a student's SEVIS record when a student has been authorized for early withdrawal from a program of study. Such termination reasons are not typically indicative of a status violation. **Conversely, other termination reasons implicate a nonimmigrant student's failure to meet the requirements of his or her nonimmigrant student status**. For example, a SEVIS termination can result from a student's failure to enroll in a full course of study, unauthorized employment, or expulsion or suspension from an SEVP-certified school. Again, a SEVIS termination for any of these reasons requires further investigation before the Agency determines whether an individual has violated his or her status and to initiate removal proceedings.[19]

And, even before the Third Circuit, the Defendants have taken the inconsistent position that SEVIS termination means that students are no longer in valid status. "Since your SEVIS record has been terminated, you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. citizenship and immigration Services (USCIS) or depart the United States immediately." *Jie Fang v. Director USCIS,* 935 F.3d at 177. Defendants are simultaneously messaging that students must leave the United States immediately to avoid removal while at the same time declaring under penalty of perjury that SEVIS termination has no direct legal effect on status.

Here, Defendants' actions in abruptly and unlawfully terminating Plaintiff's SEVIS record violated both the APA and Plaintiff's due process rights.

First, Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of

---

[19] Letter to Senator Charles Grassley, U.S. Immigration and Customs Enforcement (June 1, 2018) available at https://www.judiciary.senate.gov/imo/media/doc/2018-0601%20DHS%20to%20CEG%20-%20Student%20and%20Exchange%20Visitor%20Program.Pdf.

Notice of Motion for Ex Parte TRO/PI

statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

 As set out above, Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination. This is true even though the Department of State ("DOS") has revoked Plaintiff's F-1 visa, as the revocation of an F-1 visa is not a basis for SEVIS termination. Specifically, Plaintiff has not failed to maintain status that would warrant SEVIS termination pursuant to the controlling regulations. 8 C.F.R. § 214.2(f). Based on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS. 8 C.F.R. §§ 214.1(e)–(f). While Plaintiff has had minimal law enforcement contact, they do not have any conviction for a crime of violence with a potential sentence of more than a year. 8 C.F.R. § 214.1(g). Moreover, ICE cannot unilaterally terminate their SEVIS records because the relevant conditions for such termination do not exist: Plaintiff was not previously granted a waiver under INA § 212(d)(3) or (4) that has since been revoked, a private bill to confer lawful permanent residence relevant to the Plaintiff has not been introduced in Congress, and ICE has not otherwise published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). What is more, Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts, which may have or may have not been found, and the decision made.

 Accordingly, Defendants' actions in abruptly terminating Plaintiff's SEVIS record—actions which had no basis in the law—were arbitrary and capricious, an abuse of discretion, and

otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants have therefore violated the APA.

Second, under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations, as set out above. Because these regulations impose *mandatory* constraints on agency action, and because SEVIS registration is necessary for a student to remain enrolled as an international student and continue any OPT employment, Plaintiff has a constitutionally protected property interest in their SEVIS registrations. *See Isserdasani v. Noem,* 25-cv-283-wmc (W.D. Wis. Apr. 15, 2025)(granting Temporary Restraining Order and finding property interest in participating in SEVIS)(Exhibit A); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

Defendants terminated Plaintiff's SEVIS record based on improper grounds as no grounds exist that permit such termination, and moreover such termination was without prior notice such that Plaintiff was provided with no opportunity to respond. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they

may enjoy that right they must first be notified.'") (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The need for that opportunity to respond, and the resulting prejudice from the absence of that opportunity, is clear here, as Plaintiff would have a valid basis on which to dispute any violation of their status if such a forum existed in which to do so—they could present evidence that they sustained no conviction. The failure to provide notice of the facts that formed the basis for the SEVIS termination was therefore a violation of due process under the Fifth Amendment.

Thus, Plaintiff has established that they are likely to succeed on the merits of their claims.

### 2. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

Plaintiff will suffer irreparable harm were a temporary restraining order not issued, as they are currently at risk of further unlawful enforcement action by Defendants—including arrest, detention, being transferred to another jurisdiction, and deportation.

As described above, other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. For example, there have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to

detention facilities in Louisiana and Texas.[20] On information and belief, there are several

additional cases of students who have been arrested since their visas were revoked who were

initially detained near where they lived, then moved to the South the day before or day of

their bond hearing in immigration court. Their fear and concern of similar actions against

them is not hypothetical.[21]

Over the past two weeks, visa revocations and SEVIS terminations have shaken

campuses across the country and New Jersey, including those at Rutgers, Rowan, Montclair

State.[22] The targeted SEVIS terminations have taken place against the backdrop of numerous

demands being made of universities by the federal government and threats of cutting off

billions of dollars in federal funding. They have created chaos as schools have attempted to

---

[20] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

[21] *See, e.g.,* Emily Bregel & Prerana Sannappanavar, *Student Visas Revoked in Arizona: ASU Cites 8, UA Refuses to Say*, Arizona Daily Star, April 4, 2025 (*quoting* undersigned counsel as confirming that an ASU master's student was detained and placed into removal proceedings in Florence, Arizona), *available at* https://tucson.com/news/local/education/college/article_ce8c47d9-d4e0-4131-a117-7638aec0e889.html

[22] Joanna Gagis, *Why Were Student Visas Revoked for International Students in NJ?,* NJ Spotlight News (April 14, 2025) available at: https://www.njspotlightnews.org/video/why-were-student-visas-revoked-for-international-students-in-nj/ Trevor Hughes, *19 State AGs Ask Federal Judge to Block Trump's International Student Visa Cancellations,* USA Today (April 11, 2025) available at: https://www.usatoday.com/story/news/nation/2025/04/11/attorneys-general-lawsuit-trump-student-visa-cancellations/83048386007/

Notice of Motion for Ex Parte TRO/PI

understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

Apart from fearing the very real possibility of further unlawful enforcement action, since receiving the notices of their SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue their employment so that they can advance their career and continue to utilize the education they gained in the United States to benefit the US economy.  They are also faced with the lack of ability to change status to another visa status (such as H-1b or O-1 relating to employment in professional capacity or by someone with outstanding abilities) based on employment obtained after graduation from school (as such change of status must be filed while the individual is still in a valid visa status), detention and incarceration by ICE, or ultimately deportation or otherwise the obligation to leave the country without any ability to return to their studies, employment, career, or community which, in Plaintiff's case, includes their lawful permanent resident partner.

Interruption of their optional practical training after a multi-year education in the United States, after years of hard work and investment of time and resources, would be an irreparable injury. Interruption of their employment as part of that education which is often the next step to a successful career based on their education in the United States would be an irreparable injury to them and their family. Being unable to move on to the next step in their education or career such as another work-related visa would be an irreparable injury—because the absence of the ability to continue in valid status would mean having to depart the country. In this case, the

circumstances of such departure strongly indicate the absence of any ability to return, especially given that some of the international students around the U.S., and even in New Jersey, previously departed, presented their criminal history, and were granted the very visa of which they are now accused of having violated the terms. These circumstances strongly suggest that, if Defendants' actions are allowed to stand, any other future visa application would be denied under whatever justification the government currently believes requires the revocation of their current status. Therefore, if Plaintiff's SEVIS record is allowed to remain terminated, they will likely be obligated to leave the country and can expect to never be permitted to return.

Thus, a temporary restraining order is necessary to prevent Plaintiff from suffering irreparable harm by being subjected to further unlawful enforcement action stemming from the unlawful termination of their SEVIS record.

### 3. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order

The balance of equities and the public interest undoubtedly favor granting this temporary restraining order.

First, the balance of hardships strongly favors Plaintiff. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Plaintiff is a student who has maintained their student status, is actively engaged in educational activities, and is lawfully employed, which has been the status quo for multiple years. Plaintiff has never been convicted of a crime. As such, there is no evidence of any sudden change in underlying facts, or imminent harm to the government or public interest in

Plaintiff continuing their studies or work for the brief period of time that the instant litigation will take to determine whether they lawfully can continue to do that. Therefore, the government cannot allege harm arising from a temporary restraining order or preliminary injunction ordering it to comply with the APA and the Constitution.

Further, any purported burden imposed by requiring Defendants to refrain from taking further unlawful enforcement action against Plaintiff is, at most, *de minimis* and clearly outweighed by the substantial harm Plaintiff will suffer as long as they continue to be subjected to the very real possibility of further unlawful enforcement action. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

Finally, a temporary restraining order is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a temporary restraining order is not entered, the government would effectively be granted permission to take unlawful and unconstitutional enforcement action against Plaintiff based on their unlawful SEVIS termination. "The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention. . ."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public

interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Therefore, the public interest overwhelmingly favors entering a temporary restraining order and preliminary injunction.

### 4. Plaintiff Has Complied with the Requirements of Rule 65, Fed.R.Civ.P.

Finally, as set forth *supra*, Plaintiff asks this Court to find that they have complied with the requirements of Rule 65, Fed.R.Civ.P., for the purpose of granting a temporary restraining order. Pursuant to Rule 65(b)(1), this Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if a) specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss or damage will result to the plaintiff before the adverse party can be heard in opposition; and 2) the plaintiff's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Here, Plaintiff respectfully submits that sufficient notice has been given to Respondents since the Chief of the Civil Division of the United States Attorney's Office for the District of New Jersey has been provided with a copy of the instant motion. *See* Exhibit B, Letter from Jeff Joseph to John Basiak dated April 16, 2025. The U.S. Attorney's Office represents Defendants in civil litigation in which they are named as defendants. While proper service may not have been made on Defendant's counsel, for the purpose of Rule 65(b)(1), this Court should find that written notice has, in fact, been provided to the adverse party. In the event this Court finds that not to be the case, it should nevertheless find that the requirements of Rule 65(b)(1)(A) and (B) have been met. *See* Exhibit C, Declaration of Jeff Joseph.

Rule 65(c) also states that the court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Under the circumstances of this case, however, Plaintiff respectfully asks this Court to find that such a requirement is unnecessary, since an order requiring Defendants to refrain from arresting, detaining, or transferring Plaintiff, and/or to refrain from giving Defendant's unlawful actions legal effect, should not result in any conceivable financial damages to Defendants.

**V.      CONCLUSION AND PRAYER FOR RELIEF**

For all the above reasons, this Court should find that Plaintiff warrants a temporary restraining order and a preliminary injunction preserving the status quo *before* the SEVIS terminations.

Specifically, Plaintiff requests this Court to enter the following findings and orders, pursuant to Rule 65, Fed.R.Civ.P, and 5 U.S.C. § 705:

A) That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to preserve the status quo of Plaintiff's valid international student status that authorizes them to continue pursuing their studies and authorized student employment, which includes the ability to seek the concomitant benefits of that valid status such as the legal eligibility to apply for Optional Practical Training, Curricular Practical Training, or a change of status to another non-immigrant visa status, while this litigation remains pending;

Notice of Motion for Ex Parte TRO/PI

B)  That prohibitive injunctive relief, through the issuance of a temporary restraining order, is also necessary to prevent Defendants from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings;

C)  That, under the circumstances of this case, it is proper to waive the requirement that Plaintiff give an amount of security in connection with the issuance of an injunctive order; and

D)  That, following subsequent briefing and argument on the issues, it is appropriate to order mandatory injunctive relief, through the issuance of a preliminary injunction, to prevent the damages described above, and to vacate and set aside the termination of their SEVIS record, and to reinstate or reissue their I-20 form, and work authorization; and

E)  To the extent that ICE claims in the course of this litigation that SEVIS termination does not render a student out of status or unlawfully present, that they be ordered to immediately issue public-facing guidance to the public in general, employers who employ students on OPT specifically, and DSOs at Universities and Colleges specifically, that they should take no adverse action against students based on SEVIS termination for actions that do not warrant termination under the governing regulations and law.

Dated: April 17, 2025                    Respectfully submitted,

                                            s/ Jeff Joseph

                                         Jeff Joseph
                                         Berry Appleman & Leiden

2400 N. Glenville Drive
Richardson, TX  75082
(720) 273-4647
*Pro hac vice pending*

Gregory P. Copeland
Law Office of G P Copeland
6565 Spring Brook Avenue,
Suite 8, #195
Rhinebeck, NY 12572
Tel.: (845) 280-6446
g@gpcopeland.com

27

Notice of Motion for Ex Parte TRO/PI