UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 18, 2025

VIA ECF
All Counsel of Record

**LETTER ORDER**

Re: **Student Doe #1 v. Donald J. Trump, et al.**
    **Civil Action No. 25-2825**

Dear Litigants:

Before the Court is Plaintiff Student Doe #1's Motion for a Temporary Restraining Order ("TRO"), ECF No. 4 (the "Motion"). Plaintiff asks this Court to grant the Motion and enter an order (1) restraining Defendants "from taking any enforcement action against Plaintiff arising directly or indirectly" from the termination of Plaintiff's F-1 status under the Student and Exchange Visitor Information System ("SEVIS"), including detaining Plaintiff, transferring them to another jurisdiction, or removing them from the United States pending these proceedings; and (2) restoring the status quo as it existed before Defendants terminated Plaintiff's SEVIS status. See Motion at 2, 25–26. Having carefully reviewed Plaintiff's submissions,[1] this Court **GRANTS** Plaintiff's Motion for a TRO pending further proceedings.

   I.    BACKGROUND

Plaintiff is a citizen of China who currently resides in Jersey City, New Jersey. ECF No. 4.5 ("Doe Decl.") at ¶ 3. Plaintiff successfully completed a Masters degree in Mathematical Statistics and Probability at a university in New York, graduating in December 2022. Id. ¶ 4; see also Motion at 2. After graduation, Plaintiff obtained their Optional Practical Training ("OPT") work authorization pursuant to their F-1 visa and began working at a company in January 2023. Id. ¶ 5. Plaintiff had been continuously employed at that company. Id.

On July 12, 2024, Plaintiff was involved in a dispute with their ex-partner and "was charged with a single municipal disorderly persons offense in the [Hudson County, New Jersey] Municipal Court for simple assault in violation of Disorderly Persons Code 2C:12-1A(1)." Id. ¶ 7; see also

---

[1] The Court acknowledges that Defendants have not yet had the opportunity to weigh in on Plaintiff's Motion. However, in light of Defendants' request for an extended briefing schedule and failure to agree to Plaintiff's proposed stipulation that Defendants refrain from taking enforcement action—including arresting, initiating removal proceedings, detaining, transferring, or deporting the Plaintiff—pending this Court's adjudication of Plaintiff's Motion, see ECF No. 11, this Court deems an ex parte ruling appropriate pursuant to Federal Rule of Civil Procedure 65(b)(1).

1

Motion at 6. Plaintiff pleaded not guilty, and the city attorney dismissed the case. Doe Decl. ¶ 7. Plaintiff has no other criminal history. Id.

Just over a week ago, on April 10, Plaintiff received an email from their university stating that "[w]e noticed that SEVIS record was auto-terminated on 4/9/2025 by [the Student Exchange Visitor Program ("SEVP")] with the reason below and we wanted to make sure you were aware of it." Id. ¶ 8. According to Plaintiff, the email noted that their SEVIS record was terminated on April 9 with the following justification: "Termination Reason: OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Id. Plaintiff independently verified[2] that the Department of State also revoked their F-1 visa on April 9. Id. ¶ 9; ECF No. 1 ("Compl.") at ¶ 3.

Having learned that Plaintiff's SEVIS status was terminated, Plaintiff's employer terminated their employment as well, and halted any efforts to sponsor Plaintiff's immigration case; Plaintiff previously had plans to enter the H-1B lottery and change their status in the United States. Doe Decl. ¶¶ 10–11.

By consequence, Plaintiff is now "unable to change status to another valid nonimmigrant status, unable to change employers, unable to apply for enrollment at a different school or doctorate program[,] and unable to pursue other post-graduate opportunities." Id. ¶ 12. Plaintiff also lost a lucrative salary, and, in the long run, will suffer harm to their earning potential and career trajectory. Id. ¶¶ 13–14.

Plaintiff has also experienced, and will continue to experience, severe impacts on their mental health. Id. ¶¶ 14–16. Plaintiff lives with "extreme stress and anxiety" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT." Id. ¶ 15. They are also frightened they will be separated from their current partner, and that they "will be arrested, transferred and deported like so many other students." Id. Simply put: Plaintiff "live[s] every day in fear." Id. ¶ 16.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions. Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted). One purpose of a TRO is to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," pending further proceedings. See Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 318 (3d Cir. 2015) (citation omitted). To establish that they are entitled to such relief,[3] Plaintiff must demonstrate:

---

[2] Plaintiff alleges that, to date, the Department of State has not notified Plaintiff that their visa has been revoked. Compl. ¶ 3.

[3] Plaintiff seeks both a temporary restraining order and a preliminary injunction. See generally Motion. For purposes of this Order, the Court's ruling is confined to Plaintiff's request

2

> (1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (citing Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919–20 (3d Cir. 1974) (citations omitted)); see also Ballas v. Tedesco, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). Where, as here, the Government is the opposing party, the last two factors merge for purposes of the Court's TRO analysis. See Nken v. Holder, 556 U.S. 418, 435 (2009).

### III. DISCUSSION

Both of Plaintiff's arguments in support of their Motion arise under the Administrative Procedure Act ("APA"). First, Plaintiff contends that the Defendants' termination of Plaintiff's SEVIS status violates 5 U.S.C. § 706(2)(A), (C)–(D) of the APA, which establishes that final agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." See Motion at 16–18. Second, Plaintiff argues that the Defendants' actions violate 5 U.S.C. § 706(2)(B) of the APA, which likewise allows Courts to set aside final agency action if it is "contrary to constitutional right, power, privilege, or immunity."[4] Id. Because Plaintiff need only establish a likelihood of success on a single claim to obtain a TRO, the Court limits its review to Plaintiff's first argument. See Pa. Pro. Liab. Joint Underwriting Ass'n v. Wolf, 328 F. Supp. 3d 400, 410 n. 2 (M.D. Pa. 2018).

---

for a temporary restraining order. Nonetheless, it is instructive to note that each mechanism for emergent relief sought essentially requires satisfaction of the same standard, but relief available via temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," whereas injunctive relief seeking beyond maintenance of the status quo must normally be obtained through a motion seeking a preliminary injunction. Hope v. Warden York Cnty. Prison, 956 F.3d 156, 160–62 (3d Cir. 2020).

In addition, "a preliminary injunction must be issued with notice to the adverse party," see id. at 160 (citing Fed. R. Civ. P. 65(a)(1)), but a temporary restraining order "may be issued without notice where it is 'clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,'" see id. (quoting Fed. R. Civ. P. 65(b)(1)(A)). Here, Defendants have received notice of Plaintiff's Motion. See, e.g., ECF Nos. 4.3, 8, 9, 11.

[4] Here, Plaintiff asserts that "[p]rocedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment." Motion at 18.

3

### A. Likelihood of Success on the Merits

Plaintiff argues that Defendants have violated the APA[5] because they "have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination." Motion at 17. Plaintiff is likely to succeed on this claim.

SEVIS termination may occur under two general circumstances: (1) a student fails to maintain status, or (2) the Department of Homeland Security ("DHS") terminates status. See 8 C.F.R. §§ 214.2(f), 214.1(d); see also Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Isserdasani v. Noem, No. 25-283, 2025 WL 1118626, at *1 (W.D. Wis. Apr. 15, 2025).

As to the first category, a student fails to maintain status when they fall out of compliance with F-1 status requirements, for example, by not maintaining a full course of study. See 8 C.F.R. § 214.2(f) (listing requirements for F-1 status). Students are also prohibited from engaging in particular conduct, including accepting unauthorized employment, providing false information to DHS, or engaging in criminal activity. See id. § 214.1(e)–(g). Criminal activity is defined to include instances where a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." Id. § 214.1(g).

As to the second category, termination of SEVIS status can occur (1) "by revoking a waiver that the Attorney General had previously authorized under [Immigration and Nationality Act] § 212(d)(3) or (4)," (2) "by the introduction of a private bill to confer permanent resident status," or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 176 (3d Cir. 2019) (quoting 8 C.F.R. § 214.1(d)).

On the current record, none of the aforementioned bases for terminating SEVIS status have been satisfied. It is not apparent that Plaintiff has fallen out of compliance with F-1 status requirements. See Compl. ¶ 4 ("Plaintiff has been in full compliance with the terms of their F-1 status . . . ."); Motion at 3 (same). And "[b]ased on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS." Motion at 17.

Indeed, Plaintiff had been charged with simple assault under N.J.S.A. 2C:12-1a(1), see Doe Decl. ¶ 7, but the regulations prohibiting criminal activity define it as involving a "convict[ion]," 8 C.F.R. § 214.1(g). Plaintiff's charges were dropped. Doe Decl. ¶ 7. Cf. Isserdasani, 2025 WL 1118626, at *4 (holding that, even if plaintiff's misdemeanor offense qualified as a crime of violence, the charge was not ultimately pursued and plaintiff was never convicted).

Finally, nowhere in the record can the Court discern that any of 8 C.F.R. § 214.2(f)'s

---

[5] SEVIS termination is a final agency action reviewable under the APA. See, e.g., Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 185 & n.100 (3d Cir. 2019); Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Student Doe v. Noem, No. 25-1103, 2025 WL 1134977, at *5 (E.D. Ca. Apr. 17, 2025).

requirements have been met. There is no record of waiver revocation, a private bill to confer permanent resident status, or notification in the Federal Register.

Accordingly, this Court concludes that Plaintiff "has shown a substantial, if not overwhelming, likelihood of success on the merits," Isserdasani, 2025 WL 1118626, at *5, based on their claim that Defendants—acting without a lawful or rational basis to terminate Plaintiff's SEVIS status—have acted ultra vires in violation of 5 U.S.C. § 706(2)(A), (C)–(D) of the APA.

### B. Irreparable Harm

Plaintiff next argues that they will suffer irreparable harm if a TRO is not issued because (1) they are at risk of "unlawful enforcement action by Defendants—including arrest, detention, being transferred to another jurisdiction, and deportation," (2) they are suffering and will continue to suffer mental health consequences in the form of "high levels of stress and anxiety," and (3) because of the interruption to their OPT program, which effectively forecloses their ability to "move on to the next step in their education or career" in which they have invested years of hard work and resources. See Motion at 19–22; see generally Doe Decl. The Court agrees that Plaintiff will suffer an irreparable harm that cannot be redressed by a legal or an equitable remedy following a trial if a TRO is not issued. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

Plaintiff rightly notes that "other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained," and refers to a potential "policy and practice" of those individuals being transferred "far from their homes, school, and communities" to detention centers in places like Texas and Louisiana once they are detained. Motion at 19. See also id. at 20 n.20. The Court finds that Plaintiff's fear and concern of similar actions happening to them is not hypothetical or speculative.[6] See Doe Decl. ¶ 15 ("I am . . . terrified that I will be arrested, transferred and deported like so many other students I am hearing about on the news.").

Plaintiff is also stricken by significant stress and anxiety stemming from the uncertainty of "what will happen to them" and the potential consequences of Defendants' unlawful conduct—including their inability to continue their employment, to change status to another visa status based on employment in professional capacity or by display of outstanding ability—ICE detention and incarceration, and potential deportation that will deprive them "the ability to return to their studies, employment, career, or community which, in Plaintiff's case, includes their lawful permanent resident partner." See Mot. at 21; Doe Decl. ¶¶ 14–16.

Plaintiff anticipated entering the H-1B lottery before they were terminated by their employer because of Defendants' conduct. Doe Decl. ¶ 11. Now, Plaintiff's employer is "unwilling to continue with [their] case," and Plaintiff is unable to change status to another valid nonimmigrant status, unable to change employers, or apply for admission to a different school. Id. ¶ 12. Plaintiff's present career outlook is a radical departure from Plaintiff previously earning

---

[6] To underscore this point, and as set forth above, as of the date of this Order, counsel for Defendants was unable to confirm whether Defendants would stipulate to not take any enforcement action against Plaintiff, including arrest, initiation of removal proceedings, detainment, transfer, or deportation. See ECF No. 11 at 2.

5

more than $100,000 per year with good prospects of continued employment and career growth. Id. ¶¶ 13–14. Plaintiff notes that they "live every day in fear" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT." Doe Decl. ¶¶ 15–16.

Critically, however, Plaintiff argues that the "circumstances of [their] departure strongly indicate the absence of any ability to return," which would be consistent with the experiences of other international students around the United States, including in New Jersey, who departed under similar circumstances. See Motion at 22. Plaintiff fears that they would be unsuccessful in reapplying for any future visas, for they fear that Defendants may justify future termination or revocation using the reasoning applied to the termination and revocation of Plaintiff's prior status. Id.

For these reasons, the Court finds a TRO is necessary to prevent Plaintiff from suffering irreparable harm because of Defendants' termination of their SEVIS record. Cf. Patel, 2025 WL 1134875, at *2 ("[T]he disruption of education and potential accrual of time out of lawful status that could not be regained[,] constitute an immediate and irreparable harm to Plaintiff warranting a TRO."); Doe v. Noem, No. 25-633, 2025 WL 1141279, at *7 (W.D. Wash. Apr. 17, 2025) (loss of employment authorization, interruption of post-secondary educational opportunities, and threat of removal in tandem with economic and reputational loss can constitute irreparable harm); Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015) (holding that "[e]motional distress, anxiety, depression, and other psychological problems can constitute irreparable injury.").

### C. Balancing Test

Finally, Plaintiff contends that the balance of equities and public interest weighs in favor of granting the Motion. See Motion at 22–24. Again, the Court agrees. Although Defendants have not yet had a chance to respond to Plaintiff's Motion, it is unlikely that any harm will come to Defendants because of this TRO.[7] Considering the relatively short time between entry of the TRO and a hearing before this Court, this TRO cannot credibly interfere with Defendants' enforcement priorities.

On the other hand, Plaintiff is allegedly facing significant harm, already discussed at-length above. Since Plaintiff has lawfully resided within the United States, they have worked hard to accomplish impressive goals, earning a Masters degree, securing a well-paying job, and maintaining that employment until the unexpected termination of their SEVIS status. See Doe Decl. ¶¶ 4–5. That termination has seriously impacted Plaintiff's professional path, personal life, and mental health. Id. ¶¶ 14–16. This calculable harm to Plaintiff strongly outweighs any potential harm that may come to Defendant, considering there is no apparent reason why Plaintiff is undeserving of the fruits of their years-long efforts.

Likewise, the public's interest weighs in favor of entering the requested TRO. Ensuring that SEVIS terminations occur in compliance with applicable law is undoubtedly in the public interest. See Doe, 2025 WL 1141279, at *9 ("The public has a vested interest in a federal

---

[7] For this reason, among others, this Court exercises its discretion to waive Rule 65(c)'s bond requirement.

government that follows its own regulations."). Cf. Town of Newton v. Rumery, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring) ("The public has an interest in seeing its laws faithfully executed."); St. John–St. Thomas Hotel & Tourism Ass'n, Inc. v. Government of the Virgin Islands, 41 V.I. 317, 337–38 (D. VI. 1993), rev'd on other grounds, 218 F.3d 232 (3d Cir. 2000) (noting that the public has an interest in the executive branch's compliance with federal law). Moreover, New Jersey and its taxpayers have an interest in ensuring that its residents can pursue higher education and obtain gainful employment resulting therefrom, so long as such pursuit is legally permissible. Therefore, the balance of these remaining factors weigh in favor of granting the requested interim relief.

### IV. CONCLUSION

Plaintiff's Motion, ECF No. 4, is **GRANTED**. Defendants are temporarily enjoined from the date of this Order until May 6, to accommodate the Easter holiday, as follows:

(1) Defendants shall restore Plaintiff's SEVIS record and status and set aside Defendants' termination of Plaintiff's SEVIS status;

(2) Defendants are enjoined from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of Defendants' decision to terminate Plaintiff's SEVIS records, including arresting, detaining, or removing Plaintiff from this Court's jurisdiction, or ordering the same, without providing adequate notice to this Court and to Plaintiff's counsel, as well as sufficient time to contest any such enforcement action.

**IT IS FURTHER ORDERED** that Plaintiff shall file, under seal, identifying information including full name, address, and date of birth, or any other information required for Defendants to reinstate their F-1 student status in SEVIS.

**IT IS FURTHER ORDERED** that Defendants shall file their response to Plaintiff's Motion on or before April 25, the date they requested in response to the Court's request. Plaintiff shall file their reply brief on or before April 30. Temporary restraints will remain until the Preliminary Injunction hearing on May 6, described below. Should either party have any objections to the foregoing briefing schedule and the duration of restraints, they shall advise the Court immediately, and no later than noon tomorrow, in which case the court will impose a more expedited briefing and hearing schedule.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Motion shall be held on May 6 at 2:00 p.m. at the Martin Luther King Federal Courthouse in Newark, New Jersey.

**IT IS FURTHER ORDERED** that the parties shall file respective notices by 9:00 a.m. on May 2 of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

**SO ORDERED.**

<u>*s/ Madeline Cox Arleo*</u>
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**