ALINA HABBA
United States Attorney
ANGELA E. JUNEAU
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
862-240-2409
Angela.Juneau@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STUDENT DOE #1, <br><br> *Plaintiff*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants.* | HON. MADELINE COX ARLEO <br><br> Civil Action No. 25-2825 (MCA)(LDW) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

ALINA HABBA
UNITED STATES ATTORNEY
Attorney for Defendants

On the brief:
Angela E. Juneau
Assistant United States Attorney

## <u>TABLE OF CONTENTS</u>

Preliminary Statement..............................................**Error! Bookmark not defined.**

Statement of Facts...................................................**Error! Bookmark not defined.**

    A.   The F-1 Nonimmigrant Program...............**Error! Bookmark not defined.**

    B.   The SEVIS Database................................**Error! Bookmark not defined.**

    C.   Plaintiff Student Doe .................................**Error! Bookmark not defined.**

Standard of Review...................................................**Error! Bookmark not defined.**

Argument ................................................................**Error! Bookmark not defined.**

   I. Plaintiff Has Not Shown Irreparable Harm...**Error! Bookmark not defined.**

   II. Plaintiff Cannot Establish a Likelihood of Success.....**Error! Bookmark not defined.**

    A.  Plaintiff's Due Process Claim..................**Error! Bookmark not defined.**

    B.  Plaintiff's APA Claims.............................**Error! Bookmark not defined.**

   III. The Balance of Equities and the Public Interest Favor Defendants. ....**Error! Bookmark not defined.**

   IV. If the Court Enters a TRO, the Court Should Require that Plaintiff Give Appropriate Security........................................**Error! Bookmark not defined.**

Conclusion...............................................................**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

### *Cases*

*Apollo Tech. Corp. v. Centrosphere Indus. Corp.,*
    805 F. Supp. 1157 (D.N.J. 1992)............................................................................ 10

*AT&T v. Winback & Conserve Program,*
    42 F.3d 1421 (3d Cir. 1994)............................................................................... 8, 23

*Bakhtiari v. Beyer,*
    No. 06-1489, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008)...................................... 12

*Barouch v. United States DOJ,*
    962 F. Supp. 2d 30 (D.D.C. 2013) .......................................................................... 21

*Bennett v. Isagenix Int'l LLC,*
    118 F.4th 1120 (9th Cir. 2024)................................................................................. 9

*Block v. North Dakota,*
    461 U.S. 273 (1983) ........................................................................................ 17, 20

*Cambranis v. Blinken,*
    994 F.3d 457 (5th Cir. 2021) ....................................................................... 14, 15, 20

*Campbell Soup Co. v. ConAgra, Inc.,*
    977 F.2d 86 (3d Cir. 1992)................................................................................... 8, 9

*Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.,*
    643 F. App'x 229 (3d Cir. Mar. 10, 2016) ............................................................... 10

*Deore v. U.S. DHS,*
    No. 25-cv-11038 (E.D. Mich)..................................................................... 10, 12, 22

*Doe v. Noem,*
    No. 25-1103 (E.D. Cali. Apr. 17, 2025) ...................................................... 11, 19, 24

*Doe v. United States Dep't of Homeland Sec.,*
    No. 20-9654, 2020 U.S. Dist. LEXIS 218715 (C.D. Cal. Nov. 20, 2020)................. 12

*El Badrawi v. Dep't of Homeland Sec.,*
    579 F.Supp.2d 249 (D. Conn. 2008).................................................................... 20

*El Rescate Legal Servs., Inc. v. EOIR,*
    959 F.2d 742 (9th Cir. 1992) ................................................................................... 22

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ................................................................. 14

*First Jersey Secur., Inc. v. Bergen,*
  605 F.2d 690 (3d Cir. 1979) ........................................................ 9

*FM 103.1, Inc. v. Universal Broad.,*
  929 F. Supp. 187 (D.N.J. 1996) .................................................... 7

*Frank's GMC Truck Center, Inc. v. General Motors Corp.,*
  847 F.2d 100 (3d Cir.1988) ....................................................... 23

*Hill v. Air Force,*
  795 F.2d 1067 (D.C. Cir. 1986) ................................................... 21

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
  903 F.2d 186 (3d Cir. 1990) ...................................................... 23

*Jacobsen v. Citi Mortg. Inc. (NJ),*
  17-1555 (MAS), 2017 U.S. Dist. LEXIS 69832 (D.N.J. May 8, 2017) ................. 9

*Jane Doe 1 v. Bondi,*
  No. 25-1998 (N.D. Ga. Apr. 18, 2025) ................................... 11, 18, 23

*Jie Fang v. Dir., U.S. Immigr. & Customs Enforcement,*
  935 F.3d 172 (3d Cir. 2019) ...................................................... 14

*Lane v. Pena,*
  518 U.S. 187 (1996) .............................................................. 14

*Louhghalam v. Trump,*
  230 F. Supp. 3d 26 (D. Mass. 2017) ............................................... 13

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012) ...................................................... 14, 15, 20

*Messina v. The Coll. of N.J.,*
  No. 21-17576 (ZNQ), 2021 WL 4786114 (D.N.J. Oct. 14, 2021) ...................... 7, 8

*Missouri v. Jenkins,*
  515 U.S. 70 (1995) ............................................................... 22

*N.J. Retail Merchants Ass'n v. Sidamon-Eristoff,*
 669 F.3d 374 (3d Cir. 2012) ........................................................................ 8

*Nielsen v. Preap,*
 586 U.S. 392 (2019) ................................................................................... 4

*Nken v. Holder,*
 556 U.S. 418 (2009) ............................................................................. 9, 21

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,*
 290 F.3d 578 (3d Cir. 2002) ................................................................... 1, 7

*NutraSweet Co. v. Vit-Mar Enters., Inc.,*
 176 F.3d 151 (3d Cir. 1999) ..................................................................... 12

*Patel v. Bondi,* 25-101,
 2025 U.S. Dist. LEXIS 73037 (W.D. Pa. Apr. 17, 2025) ................................. 11, 23

*Quinn v. Stone,*
 978 F.2d 126 (3d Cir. 1992) ..................................................................... 16

*Raven v. Panama Canal Co.,*
 583 F.2d 169 (5th Cir. 1978) .................................................................... 19

*Reilly v. City of Harrisburg,*
 858 F.3d 173 (3d Cir. 2017) ....................................................................... 8

*Renchenski v. Williams,*
 622 F.3d 315 (3d Cir. 2010) ..................................................................... 12

*Shahamat v. Monmouth Univ.,*
 No. 22-7501, 2023 WL 2344670 (D.N.J. Mar. 3, 2023) ............................... 10

*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.,*
 108 F.4th 194 (3d Cir. 2024) .................................................................... 22

*Taylor v. U.S. Treas. Dep't,*
 127 F.3d 470 (5th Cir. 1997) .................................................................... 21

*Touchstone Rsch. Grp. LLC v. United States,*
 No. 18-CV-3451 (OTW), 2019 WL 4889281 (S.D.N.Y. Oct. 3, 2019) ..................... 20

*United States* v. *Sherwood*,
    312 U.S. 584 (1941) .................................................................................. 14

*Wash. All. of Tech. Workers v. DHS*,
    50 F.4th 164 (D.C. Cir. 2022) ................................................................ 2, 3

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ...................................................................................... 21

*Westcott v. McHugh*,
    39 F. Supp. 3d 21 (D.D.C. 2014) ............................................................ 20

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ................................................................................... 8, 21

*Young Dong Kim v. Holder*,
    737 F.3d 1181 (7th Cir. 2013) ................................................................... 5

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*,
    770 F. App'x 136 (4th Cir. 2019) ............................................................... 5

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*,
    No. 18-189, 2018 U.S. Dist. LEXIS 177991 (W.D. Va. Oct. 15, 2018) .................. 12

## *Statutes*

5 U.S.C. § 552a .............................................................................................. 19
5 U.S.C. § 552a(a)(2) .............................................................................. 19, 20
5 U.S.C. § 552a(b) .......................................................................................... 16
5 U.S.C. § 552a(f) .......................................................................................... 16
5 U.S.C. § 552a(d)(1) ..................................................................................... 16
5 U.S.C. §§ 552a(d)(1)–(4) ............................................................................ 17
5 U.S.C. § 552a(d)(2) ..................................................................................... 16
5 U.S.C. § 552a(d)(3) ............................................................................... 16, 21
5 U.S.C. §§ 552a(g)(1)–(5) ............................................................................ 17
5 U.S.C. § 552a(g)(1)(A) ............................................................................... 16
5 U.S.C. § 552a(2)-(3) .................................................................................... 21
5 U.S.C. § 702 ..................................................................................... 14, 19, 20
6 U.S.C. § 557 .................................................................................................. 4
8 U.S.C. § 1101(a)(15)(F)(i) ............................................................................ 2
8 U.S.C. § 1103 ................................................................................................ 4
8 U.S.C. § 1103(a) .......................................................................................... 22
8 U.S.C. § 1184(a)(1) ...................................................................................... 22
8 U.S.C. § 1229a ............................................................................................. 13

8 U.S.C. § 1372 ....................................................................................... 22
8 U.S.C. § 1372(a)(1) .............................................................................. 4

## *Rules*

Fed. R. Civ. P. 65 .................................................................................... 7
Fed. R. Civ. P. 65(c) ............................................................................... 23
Local Civil Rule 65.1 .............................................................................. 7

## Regulations

8 C.F.R. § 214.2(f)(1)(i) .......................................................................... 3
8 C.F.R. § 214.2(f)(5)(i) .......................................................................... 13
8 C.F.R. § 214.2(f)(7) ............................................................................. 4
8 C.F.R. § 214.2(f)(10) ........................................................................... 3
8 C.F.R. § 214.2(f)(10)(ii) ....................................................................... 3
8 C.F.R. § 214.2(f)(10)(ii)(A)(1)–(3) ...................................................... 3
8 C.F.R. § 214.2(f)(10)(ii)(C) .................................................................. 3
8 C.F.R. § 214.2(f)(10)(ii)(E) .................................................................. 4
8 C.F.R. § 214.2(f)(16) ........................................................................... 13
8 C.F.R. § 214.3(g)(1) ............................................................................. 5
82 Fed. Reg 7860-61 (Jan. 23, 2017) ...................................................... 19
84 Fed. Reg. 3493-94 (Feb. 12, 2019) ..................................................... 19
86 Fed. Reg. 69,663 (Dec. 8, 2021) ......................................................... 5

## *Other Authorities*

H.R. Report 93-1416 (Oct. 2, 1974) .................................................... 17-19

## PRELIMINARY STATEMENT

Plaintiff brings this case urging that the United States Department of Homeland Security ("DHS") and its sub-agency, U.S. Immigration and Customs Enforcement ("ICE"), change its entries in Plaintiff's Student and Exchange Visitor Information System ("SEVIS") to reflect that Plaintiff has lawful nonimmigrant status as a foreign student and to prevent ICE from taking any immigration-related enforcement actions against Plaintiff—for any reason—during the pendency of this case. *See generally* ECF No. 1, Complaint. Plaintiff alleges that ICE made recent changes to Plaintiff's SEVIS record that violated their Fifth Amendment due process rights, as well as the Administrative Procedure Act ("APA"). Plaintiff seeks a temporary restraining order ("TRO") compelling ICE to alter their SEVIS record and to enjoin Defendants from taking any enforcement against Plaintiff. *See* Complaint; ECF No. 4, Motion for Temporary Restraining Order.

The Court should deny Plaintiff's motion for a TRO because they have not met the standards for this "extraordinary remedy" that is "granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quotations omitted). First, Plaintiff has failed to allege that they are at risk of irreparable harm, much less one that is immediate. Allegations of potential removal, disruption to employment, and anxiety fail to meet the high threshold of immediate irreparable harm. Second, Plaintiff is unlikely to succeed on the merits. Plaintiff's due process claim fails

because Plaintiff lacks a constitutionally cognizable liberty or property interest in their SEVIS record. And, to the extent a change in a SEVIS record in and of itself amounts to a final "agency action" subject to review, Plaintiff's APA claims fail because the Privacy Act governs these allegations and precludes the relief Plaintiff seeks. Finally, the balance of equities and public interest factors weigh in favor of Defendants, as immigration is an executive, not a judicial, prerogative and granting a TRO would thus implicate separation-of-powers concerns. The Court should thus deny Plaintiff's motion.[1]

## STATEMENT OF FACTS

### A. The F-1 Nonimmigrant Program

The Immigration and Nationality Act ("INA") establishes the framework for foreign nationals[2] who wish to temporarily come to the United States to pursue their studies. *See Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 169–72 (D.C. Cir. 2022). More specifically, the INA allows for the entry of a foreign national, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high

---

[1]    Defendants are also attaching a declaration from Andre Watson, Assistant Director of the National Security Division within ICE's Homeland Security Investigations.

[2]    This brief uses the term "foreign national" as equivalent to the statutory term of "alien."

school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a foreign national must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

During their studies, foreign students may also elect to study in the United States via "Optional Practical Training" ("OPT"), which must be "directly related to [a student's] major area of study" in order to qualify as authorized training. *Id.* § 214.2(f)(10). OPT allows eligible students to obtain temporary employment that is directly related to a foreign national's major area of study. *Id.* § 214.2(f)(10)(ii). And foreign nationals in F-1 status, who received a science, technology, engineering, or mathematics ("STEM") degree may extend participation in the OPT program for up to an additional two years. *Id.* § 214.2(f)(10)(ii)(C); *see also Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 173 (D.C. Cir. 2022). Further, OPT can occur while a student

3

is still "in school," during breaks, or after a student has completed their course of study. *Id.* § 214.2(f)(10)(ii)(A)(1)–(3). While in school, a foreign national's status is based on that student pursuing a degree and need not be routinely renewed. *Id.* § 214.2(f)(7). For post-degree completion OPT, there are limits on how long an individual can be unemployed. In particular, foreign nationals in F-1 status may not accrue more than ninety days of unemployment unless granted a twenty-four-month STEM OPT extension, in which case they may not accrue more than a total of 150 days of unemployment. *Id.* § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may be considered a failure to maintain status. *Id.*

## B. The SEVIS Database

Congress required that the Secretary of Homeland Security, "in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title."[3] 8 U.S.C. § 1372(a)(1). Accordingly, the Secretary of

---

[3]    Many provisions of the INA still refer to the Attorney General, but in 2002, Congress transferred much of the INA's authority to the Secretary of Homeland Security. *See* 6 U.S.C. § 557; 8 U.S.C. § 1103; *see also Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019).

Homeland Security created SEVIS, "which is a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors, and J-1 visa Exchange Visitor Program participants." ICE, *Student and Exchange Visitor Information System*, https://www.ice.gov/sevis/overview (last visited Apr. 17, 2025); *see also Young Dong Kim v. Holder*, 737 F.3d 1181, 1182 n.2 (7th Cir. 2013) (describing SEVIS).

In short, "DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States." United States Department of Homeland Security, *Privacy Act of 1974; System of Records*, 86 Fed. Reg. 69,663 (Dec. 8, 2021); *see also Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 770 F. App'x 136, 136 (4th Cir. 2019). And schools are required to update SEVIS with information about foreign students in their programs. 8 C.F.R. § 214.3(g)(1).

## C. Plaintiff Student Doe

Plaintiff, a New Jersey resident, alleges they "came to study in the United States on a student visa in 2021" to pursue "their master's degree at a college or university located in New York." ECF No. 1, Complaint, ¶¶ 15, 31. Plaintiff alleges they are "a student in lawful F-1 status who," after graduating with a master's degree

5

from a United States university, began working in January 2023 on their "Optional Practical Training work authorization" pursuant to a work authorization that is "valid … through 2026." *Id.* ¶¶ 1, 29, 31. Plaintiff alleges that they have "complied with all the requirements of their visa and of the educational institution in which they are enrolled." *Id.* ¶ 1. Nevertheless, "[o]n or about April 10, 2025, Plaintiff received notice from the college or university where they are enrolled that their SEVIS status was terminated," and the "reason listed was that Plaintiff had been identified in a criminal records check." *Id.* ¶¶ 32–33. "School officials informed Plaintiff that they discovered that Plaintiff's SEVIS account was terminated." *Id.* ¶34. Plaintiff then "logged into the Department of State website to ascertain her visa status and confirmed that her F-1 visa was also revoked on April 9, 2025." *Id.* ¶ 36. Plaintiff alleges that their "only criminal history is a minor municipal disorderly persons arrest," but there was no conviction "because the prosecutor dismissed the charges." *Id.* ¶37.

Plaintiff alleges that because their SEVIS status was terminated, their employer terminated them from their "good job as a risk analyst" where they were "earning upwards of $100,000 per year." *Id.* ¶38. Plaintiff also alleges that because of their SEVIS termination, they are "experiencing elevated levels of stress and anxiety" and are unsure of whether they will be deported and how it will affect their partner, with whom they reside in Jersey City. *Id.* ¶¶39–40.

6

On April 17, 2025, Plaintiff filed this lawsuit. ECF No. 1. Plaintiff alleges violations of the Administrative Procedure Act ("APA") and the Fifth Amendment. *Id.* ¶¶ 43–58. That same day, Plaintiff filed a motion for a TRO asking this Court to, among other things, "vacate and set aside the termination of their SEVIS record" and "reinstate or reissue their I-20 form and work authorization." ECF No. 4, Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), at 26. On April 18, 2025, this Court temporarily granted Plaintiff's motion for a TRO until May 6, 2025. ECF No. 13.

## STANDARD OF REVIEW

"[A]n injunction is an extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health, Inc.*, 290 F.3d at 586 (quotations omitted). As this Court has emphasized, "'there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction.'" *Messina v. The Coll. of N.J.*, No. 21-17576 (ZNQ), 2021 WL 4786114, at *5 (D.N.J. Oct. 14, 2021) (quoting *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996)) (alteration omitted).

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1. Under these rules, a court may only grant injunctive relief when a party demonstrates that he or she: (1) has a reasonable probability of success on the merits; (2) will suffer immediate and irreparable harm

7

if the injunction does not issue; (3) the grant of preliminary relief will not result in greater harm to the nonmoving party; and (4) the injunctive relief is in the public interest. *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385−86 (3d Cir. 2012).

The first two factors are "'most critical.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The moving party "must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* But "[a] court should only issue an injunction 'if the plaintiff produces evidence sufficient to convince the district court that *all four factors* favor preliminary relief.'" *Messina*, 2021 WL 4786114, at *5 (quoting *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994)) (emphasis in original).

## ARGUMENT

### I.   Plaintiff Has Not Shown Irreparable Harm.

The Court should deny Plaintiff's request for a TRO because they have not "ma[d]e a clear showing of immediate irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Further, a plaintiff "must

demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Campbell Soup Co.*, 977 F.2d at 91. The "feared injury or harm must be irreparable—not merely serious or substantial." *Id.* at 91–92. Plaintiff does not make the necessary showing of a likely irreparable injury.

First, Plaintiff argues they will suffer irreparable harm if the Court denies the TRO because they are at risk of enforcement actions such as "arrest, detention, being transferred to another jurisdiction, and deportation." Motion at 19. Plaintiff, however, does not allege that they have been served with a Notice to Appear (the initiating document for removal proceedings) or that an immigration officer has contacted them to represent that their status is in jeopardy. Further, any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("the burden of removal alone cannot constitute the requisite irreparable injury"). Moreover, Plaintiff is free to depart the United States on their own and avoid removal proceedings. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). Thus, a subjective fear of deportation cannot establish irreparable injury.

Plaintiff also argues that they are "experiencing high levels of stress and anxiety" due to uncertainty. Motion at 21. But financial hardship and mental distress claims do not constitute irreparable injury. *See First Jersey Secur., Inc. v. Bergen*, 605 F.2d 690, 697 n.4 (3d Cir. 1979) ("additional pecuniary hardship and stress…do not constitute irreparable injury"); *Jacobsen v. Citi Mortg. Inc. (NJ)*, 17-

9

1555 (MAS), 2017 U.S. Dist. LEXIS 69832, at *6 (D.N.J. May 8, 2017) ("alleged injuries are 'financial [and]stress related,' neither of which constitute irreparable injury absent any other allegations").

Plaintiff next argues that "[i]nterruption of their employment," which is part of their education, "is often the next step to a successful career based on their education in the United States," the loss of which "would be an irreparable injury to them and their family." Motion at 21. Plaintiff also states that, "[b]eing unable to move on to the next step in their education or career such as another work-related visa would be an irreparable injury." *Id.* Notwithstanding that these are only potential harms that may occur, "courts have regularly concluded that an interruption in a student's education, while a 'genuine injury, is not irreparable." *Shahamat v. Monmouth Univ.*, No. 22-7501, 2023 WL 2344670, at *6 (D.N.J. Mar. 3, 2023) (quotation omitted). And the Third Circuit "has long held that an injury measured in solely monetary terms cannot constitute irreparable harm." *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 F. App'x 229, 232 (3d Cir. Mar. 10, 2016). Further, the "loss of potential business opportunities … is compensable by money damages and does not constitute irreparable injury." *Apollo Tech. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1209 (D.N.J. 1992).

Other courts considering claims arising from the alleged termination of SEVIS records have held the alleged injuries Plaintiff claims here do not present the type of irreparable harm that justifies a TRO. *See, e.g., Deore v U.S. DHS*, No.

10

25-cv-11038 (E.D. Mich. Apr. 17, 2025), ECF No. 20 at 13–15 (possibility of removal, academic disruption, and loss of employment are not irreparable harms, without more); *Liu v. Noem*, No. 25-cv-716 (S.D. Ind. Apr. 17, 2025), ECF 24, at 6–9 (possibility of deportation and alleged "disruption to education and future careers" do not "warrant the extraordinary exercise of judicial power required for the Court to issue a temporary restraining order"); *but see Doe v. Noem*, No. 25-1103, ECF No. 13 at 15 (E.D. Cal. Apr. 17, 2025) (holding potential detention and deportation constitute immediate irreparable harm); *Patel v. Bondi*, 25-101, 2025 U.S. Dist. LEXIS 73037, *5–*6 (W.D. Pa. Apr. 17, 2025) (finding "disruption of education" an immediate and irreparable harm); *Jane Doe 1 v. Bondi*, No. 25-1998, ECF No. 23 at 11–12 (N.D. Ga. Apr. 18, 2025) (finding loss of timely academic progress, scholarships, career opportunities, and access to education constitute immediate irreparable harm).

Because Plaintiff cannot establish irreparable harm, their motion for a TRO must fail. *See NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (failure to establish *any* element . . . renders a preliminary injunction inappropriate") (emphasis added).

## II.    Plaintiff Cannot Establish a Likelihood of Success.

Plaintiff cannot show that they are likely to succeed on their claims. Plaintiff brings four APA claims alleging that: (1) ICE's termination of their SEVIS account was arbitrary and capricious, Complaint ¶¶ 43–46; (2) the termination violated

their constitutional right to due process, *id.* ¶¶ 50–53; (3) the termination wrongly targeted people of certain races and national origins, *id.* ¶54; and (4) the termination fails to articulate facts that form a rational connection to the agency's action, *id.* ¶¶ 55–58. Plaintiff also brings a Fifth Amendment due process claim alleging that ICE terminated their SEVIS record on improper grounds and without providing Plaintiff notice or an opportunity to respond. *Id.* ¶¶47–49.

### A.    Plaintiff's Due Process Claim

Plaintiff's due process claim fails because foreign nationals lack any sort of property or liberty interest in SEVIS records. To establish a procedural due process violation, a plaintiff must first demonstrate that she has been deprived of a constitutionally protected property or liberty interest. *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).

Plaintiff can show neither interest. Plaintiff has no property interest in a SEVIS record. *See, e.g., Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 18-189, 2018 U.S. Dist. LEXIS 177991, at *11–*12 (W.D. Va. Oct. 15, 2018) (plaintiff "did not possess, nor is there any legal basis for recognizing, an independent, stand-alone property interest in his SEVIS status"); *Bakhtiari v. Beyer*, No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students); *Doe v. United States Dep't of Homeland Sec.*, No. 20-9654, 2020 U.S. Dist. LEXIS 218715, at *14 n.3 (C.D. Cal.

12

Nov. 20, 2020) ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists"); *Deore v U.S. DHS*, No. 25-cv-11038 (E.D. Mich.), ECF No. 20 at 12 ("The few courts to consider the issue have found that students could not maintain a due process claim for termination of a SEVIS record.").    Additionally, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

Further, even if Plaintiff had a protected interest, there are sufficient existing processes in place.  As the Department of Homeland Security explains on its website, there are administrative processes available after SEVIS termination, including options (1) to pursue correction or reinstatement, or (2) to depart and obtain a new SEVIS record. Dep't of Homeland Sec., Reinstatement COE (Form I-20) (available at   https://studyinthestates.dhs.gov/sevis-help-hub/student-records/certificates-of-eligibility/reinstatement-coe-form-i-20) (last visited Apr. 21, 2025). Students can pursue these processes through their school's Designated School Official.  And if students lose their F-1 status, they can seek reinstatement from U.S. Citizenship and Immigration Services ("USCIS"). 8 C.F.R. 214.2(f)(16)  Even if Plaintiff were placed into removal proceedings, the procedures available to them in immigration court comply with the Fifth Amendment.  *See* 8 U.S.C. § 1229a (requiring an immigration judge to conduct proceedings for deciding deportability of a noncitizen by, among other

13

things, receiving evidence and examining the noncitizen and witnesses).  Accordingly, Plaintiff lacks a constitutionally protected interest in their SEVIS record, but even if one existed, Plaintiff can take advantage of processes afforded them.

## B.    Plaintiff's APA Claims

Plaintiff's APA claims are unlikely to succeed because the Government has not waived sovereign immunity under the APA for Plaintiff's claims challenging an alteration to the contents of a SEVIS record.  That is because another federal statute, the Privacy Act of 1974, precludes APA review.[4]

The APA's waiver of sovereign immunity is contained in 5 U.S.C. § 702. Waivers of sovereign immunity must be "unequivocally expressed in statutory text… and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). The scope of this type of waiver is "strictly construed" in the Government's favor. *Id.* "[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States* v. *Sherwood*, 312 U.S. 584, 586 (1941)).

Here, the APA's waiver of sovereign immunity contains enumerated exceptions that limit the reach of its general waiver, including that "[n]othing

---

[4]    The Government also maintains that the alleged termination of a SEVIS record and F-1 status is not a final agency action for purposes of APA review, but it acknowledges the Third Circuit's decision in *Jie Fang v. Dir., U.S. Immigr. & Customs Enforcement*, 935 F.3d 172, 182 (3d Cir. 2019). We note this argument solely to preserve the issue for appeal.

14

herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. "According to the Supreme Court, '[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes.'" *Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (hereinafter "*Patchak*")).

At least one Court has interpreted § 702 and the Supreme Court's decision in *Patchak* to contain three requirements to trigger the "any other statute" exception of § 702: "(1) the statute must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal 'in particularity' with the claim, and (3) Congress must have intended the statute to afford the 'exclusive remedy' for that type of claim/grievance." *Cambranis*, 994 F.3d at 463 (citing *Patchak*, 567 U.S. at 216). Plaintiff asks this Court to "[o]rder that Defendants restore Plaintiff's SEVIS record and status." Complaint, Prayer for Relief ¶4. Congress established the Privacy Act to address similar claims related to information held in government databases. To the extent Plaintiff's APA claims seek to alter the contents of a SEVIS record, those APA claims fail under § 702 because another statute, the Privacy Act, prohibits the relief sought.

***The Privacy Act addresses the same type of grievance.*** Plaintiff alleges that on April 10, 2025, they "received notice from the college or university where

they are enrolled that their SEVIS status was terminated." Complaint ¶ 32. Plaintiff acknowledges that SEVIS is a "government database." *Id.* ¶ 2. Plaintiff claims that they are challenging "ICE's illegal termination of their SEVIS record." *Id.* ¶ 9. Plaintiff asks this Court to "[o]rder that Defendants restore Plaintiff's SEVIS record and status." *Id.*, Prayer for Relief ¶4. Congress, however, enacted the Privacy Act to address this type of grievance. *See* 5 U.S.C. § 552a(b).

The Privacy Act addresses records held in government databases. 5 U.S.C. § 552a(b). It permits an individual to review agency records, request the agency correct them, appeal to the agency head if the amendment is denied, and submit a statement of disagreement with the records. *Id.* § 552a(d)(1) (access); § 552a(d)(2) (amendment); § 552a(d)(3) (appeal to agency head); § 552a(d)(4) (statement of disagreement). Once an individual has exhausted his administrative remedies to amend his records, the Privacy Act contains a consent to suit in federal district court. § 552a(d)(3) (exhaustion of administrative remedies); 552a(g)(1)(A) (civil remedies). Thus, the first factor of the *Cambranis* test is met.

***The Privacy Act deals "in particularity" with the asserted claims.*** The Privacy Act sets forth the contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied. 5 U.S.C. § 552a(d)(2). The Privacy Act also states that agencies must establish particular

16

procedures for the review and amendment process. *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act). It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted. 5 U.S.C. §§ 552a(d)(1)–(4). It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)–(5); *see also Block v. North Dakota*, 461 U.S. 273, 286 n.22 (1983) (indicating that "the balance, completeness, and structural integrity" of a statutory provision "belie[s] the contention that it was designed merely to supplement other judicial relief"). Thus, the second factor of the *Cambranis* test is met.

**Congress intended for the Privacy Act to provide the exclusive remedy in these types of challenges.** The completeness of the Privacy Act scheme to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows that Congress intended the Privacy Act to provide the exclusive remedy for claims such as those advanced by Plaintiff. That conclusion is consistent with the legislative history in which Congress explained that the Privacy Act contained provisions "for the exercise of civil remedies by individuals against the Federal Government through the Federal courts to enforce their rights, with

17

the burden of proof resting on the government." H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy Sourcebook[5] at 297). The House Report further explained that "[t]he section authorizing civil actions by individuals is designed to assure that any individual who has been refused lawful access to his record or information about him in a record or has otherwise been injured by an agency action which was based upon an improperly constituted record, will have a remedy in the Federal District courts." *Id.* at 17 (*see* Privacy Sourcebook at 310). When reconciling the House and Senate versions of the bill, the committee explained the remedies available under the Privacy Act to correct or amend a record, including the applicable standard of proof: "These amendments represent a compromise between the two positions, permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, … the standard for recovery of damages was reduced to 'willful or intentional' action by an agency." *See* Privacy Sourcebook at 862 (citing from the Congressional Record—Senate, Dec 17, 1974—Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House).

---

[5]     S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook") *available at https://www.justice.gov/opcl/paoverview_sourcebook.*

Thus, all three elements of the *Cambranis* test are met by the Privacy Act, and it qualifies as "any other statute" under § 702. *But see Jane Doe 1*, No. 25-1998, ECF No. 23 at 10–11 (holding Privacy Act does not take SEVIS termination claims beyond the scope of the APA's waiver of sovereign immunity); *Doe*, No. 25-1103, ECF No. 13 at 8–9 (same).

***The Privacy Act expressly precludes the relief Plaintiff seeks.*** The sovereign immunity limitation of § 702 requires not just that another statute addresses the particular claims asserted, but also that it "forbids the relief sought." 5 U.S.C. § 702. That is true here. Plaintiff is a foreign national "from a country in Asia" who is here in the United States on a student visa. Complaint ¶¶ 29, 31. As such, they do not qualify as an "individual" under the Privacy Act. Congress intentionally restricted *who* may challenge purportedly erroneous records under the Act to U.S. citizens and Lawful Permanent Residents. 5 U.S.C. § 552a(a)(2) (defining "individual"); *see* H.R. 93-1416 at 11 (Privacy Sourcebook at 304) (explaining the law "would not affect any  other foreign nationals."). Indeed, Congress explicitly acknowledged that foreign nationals are barred from the Privacy Act's remedial measures by passing the Judicial Redress Act of 2015, which extended certain remedial measures of the Privacy Act to citizens of designated countries. 5 U.S.C. § 552a note. The Attorney General twice designated European countries whose citizens could take advantage of such redress. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019). Congress and the

19

Attorney General have not extended that designation to Asian countries, thus barring Plaintiff from the relief they seek. *Raven v. Panama Canal Co.*, 583 F.2d 169, 170 (5th Cir. 1978) (applying plain meaning to definition of individual in § 552a(a)(2) and holding that "since the plaintiff is a Panamanian citizen and thus not an 'individual' within the meaning of the Privacy Act, she is not entitled to compel access under its authority"); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n.35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens … from suing federal agencies to correct their records").

Thus, the Privacy Act triggers the exception of § 702 of the APA that sovereign immunity is not waived if "any other statute explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702; *Patchak*, 567 U.S. at 216; *Cambranis,* 994 F.3d at 462–63. "[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Patchak*, 567 U.S. at 216 (alteration in original, quotations/citations omitted); *see also Block*, 461 U.S. at 286 n.22. As the Supreme Court noted, "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block*, 461 U.S. at 285. Other courts have reached the same conclusion in APA suits challenging government records. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008) (APA's

20

waiver of sovereign immunity did not extend to actions to correct government records); *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation"); *Touchstone Rsch. Grp. LLC v. United States,* No. 18-CV-3451 (OTW), 2019 WL 4889281, at *5– *6 (S.D.N.Y. Oct. 3, 2019) (dismissing APA claims because APA's general grant of review was not intended to duplicate existing procedures of Privacy Act). Because the APA's waiver of sovereign immunity does not extend to Plaintiff's claims, the Court lacks jurisdiction over the APA claims.

Additionally, even if Plaintiff qualified as an "individual" under the Privacy Act, their claim here would still be foreclosed because they have not alleged that they exhausted the mandatory administrative remedies as required by statute before bringing this action. *See* 5 U.S.C. § 552a(d)(3); *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam) (statutory mandate to exhaust administrative remedies is jurisdictional); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

## III.    The Balance of Equities and the Public Interest Favor Defendants.

The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. A court "'should pay

21

particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Plaintiff alleges that the Government will not be harmed "from an injunction that prevents it from engaging in an unlawful practice," which simply reiterates their claims that Defendants are engaging in unlawful conduct. Motion at 22. But this factor favors the Government because it is ICE's database that Plaintiff wishes for this Court to superintend. That is a separation-of-powers concern, and courts have acknowledged that "[c]ontrol over immigration is a sovereign prerogative" reserved for the political branches and not the courts. *El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 750 (9th Cir. 1992).

Congress has delegated to the Secretary of Homeland Security significant authority to administer and enforce immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). To that end, Congress has mandated that DHS develop and administer its own "[p]rogram to collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Thus, any order that inhibits such information-gathering by enjoining a governmental entity from enforcement actions constitutes an irreparable injury that weighs against the entry of injunctive relief. *See Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (harm to the opposing party and the public interest "call for caution because this injunction threatens federalism and the separation of powers—'two

clear restraints on the use of the equity power'") (quoting *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring)); *Deore v U.S. DHS*, No. 25-cv-11038 (E.D. Mich.), ECF No. 20 at 16 ("[E]njoining the agency's ability to exercise its authority before a complete review of the merits of the case, especially considering the novel and complex issues of law present here, is also serious and may be harmful"); *but see Patel*, 2025 U.S. Dist. LEXIS 73037 at *6; *Jane Doe 1,* No. 25-1998 (N.D. Ga.), ECF No. 23 at 13–14 (holding risk of irreparable harm to students from SEVIS termination outweighs harm to government); *Doe*, No. 25-1103 (E.D. Cal.), ECF No. 13 at 15–16 (same).

## IV.  If the Court Enters a TRO, the Court Should Require that Plaintiff Give Appropriate Security.

Finally, the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by the non-moving party if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "'Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir. 1990) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir.1988), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)).

On March 11, 2025, the President issued a memo requiring federal agencies to seek security when confronted with suits seeking emergency preliminary injunctive

23

relief.[6]  Pursuant to that memo, if the Court grants preliminary injunctive relief in this case, defendants request that the Court require plaintiffs to provide adequate security.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion for a temporary restraining order.

<div style="margin-left: 45%;">

ALINA HABBA
Acting United States Attorney

By:    /s/ *Angela E. Juneau*
ANGELA E. JUNEAU
Assistant U.S. Attorney

</div>

Dated: April 23, 2025

---

[6]    *See* White House Memo, https://www.whitehouse.gov/presidential-actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/ (last visited 4/22/2025).