**BERRY APPLEMAN & LEIDEN**
Jeff Joseph (CO Bar No. 28695)
2400 N. Glenville Drive
Richardson, Texas 75082
(720) 273-4647
Email:  jjoseph@bal.com

*Attorney Pro Hac Vice for Plaintiff*
Student Doe #1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Student DOE #1<br><br>Plaintiff,<br><br>v.<br><br>Donald J. TRUMP, in his official capacity, President of the United States of America; et al.<br><br>Defendants. | Case No. 25-cv-2825 (MCA)(LDW)<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST TO CONVERT MOTION TO PRELIMINARY INJUNCTION OR MOTION FOR SUMMARY JUDGMENT** |

Contents

**I.   PRELIMINARY STATEMENT** ........................................................................................ 2
**II.  LEGAL ARGUMENT** ..................................................................................................... 4
   **A.   THE DEFENDANTS HAVE ALWAYS TREATED SEVIS TERIMNATION AS A STATUS VIOLATION** .................................................................................................... 4
   **B.   LIKELIHOOD OF SUCCESS** ....................................................................................... 7
      **a.   DUE PROCESS** ....................................................................................................... 7
      b.   **ADMINISTRATIVE PROCEDURES ACT CLAIMS** ............................................ 8
   **C.   IRREPARABLE HARM** ............................................................................................... 10
   **D.   BALANCE OF EQUITIES AND PUBLIC INTEREST** ............................................. 15

1

**Cases**

*All. for Retired Ams. v. Bessent*, Case No. 25-cv-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025).................................................................................................................................. 8
*Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)......................................................................... 9
*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) ................................................................................................................................ 9
*Doe v. Noem, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) .................................................................................................................................................. 10
*FAA v. Cooper*, 566 U.S. 284, 298 (2012)..................................................................................... 10
*First Jersey Secur., Inc. v. Bergen,* 605 F.2d 690, 697 at n. 4 (3d Cir. 1979) ............................... 11
*Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (*quoting Bowen*, 487 U.S. at 901) ........... 9
*Jie Fang v. Director USCIS,* 935 F.3d 172, 177 (3d Cir. 2019) ........................................... 5, 7, 11
*Kilmar Armando Abrego Garcia, et al v. Noem,* 8:25-cv-000951-PX (4th Cir. Apr. 17, 2025)(Wilkinson, Circuit Judge)........................................................................................... 16
*Madan B K, et al v. Noem*, 1:25-cv-00419-JMB-PJG, ECF No. 19, p. 10-11 (W.D. Mich. Apr. 23, 2025).................................................................................................................................. 10
*Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022) ............................................................. 9
*United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) ....... 9

**Statutes**
(C) ................................................................................................................................................. 10
5 U.S.C. § 702............................................................................................................................. 8, 9
5 U.S.C. §§ 552a(b), ....................................................................................................................... 8
5 U.S.C. §706(2)(A)...................................................................................................................... 10
5 U.S.C. §706(2)(B)...................................................................................................................... 10
5 U.S.C.A. § 706 (2)(A)................................................................................................................ 10

**Rules**
Fed.R.Civ.P. 65(a)(2)....................................................................................................................... 3
Fed.R.Civ.P. 65(c) ......................................................................................................................... 16

**Regulations**
8 C.F.R. §214.2(f)(16)(i)(C) ........................................................................................................... 7

I.      **PRELIMINARY STATEMENT**

Since around March 25th, 2025, Immigration and Customs Enforcement has terminated the SEVIS registration and disrupted the lives of approximately 4,700 foreign students who are studying in schools and working for employers in our communities.[1]  The SEVIS terminations

---

[1] Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing,* Bloomberg, (April 15, 2015) available at: https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing

2

were done without notice to the schools, students, or employers, and with no opportunity to respond to the grounds for termination or provide evidence that the termination was improper. Schools responded to the SEVIS terminations, based on their training as well as ICE's public facing guidance, by telling students that they are no longer authorized to attend school, no longer authorized to live in the dorms, and no longer authorized to work on their optional practical training. Employers responded by terminating employees so as to avoid potential civil and criminal sanctions for continuing to employ unauthorized workers. The speed with which this dragnet was conducted, the massive amount of erroneous terminations, and the utter lack of notice or ability to challenge the terminations have left schools, employers, and students in a sheer state of confusion, panic, and fear. That appears to be part of the government's strategy and enforcement tactic.[2]  Now, the government has carried this confusion and obfuscation into courtrooms around the country declaring under penalty of perjury that SEVIS termination has no impact on status,[3] while at the same time refusing to acknowledge that their public facing guidance, as well as their own historical practice, demonstrates exactly the opposite. (Exhibit A, Declaration of DSO Nusha Shishegar).

The Court should convert the Temporary Order to a Preliminary Injunction or, in the alternative, convert the Motion for Preliminary Injunction to a Motion for Summary Judgment and issue a decision on the merits of the case, as there are no material issues of fact and Plaintiff is entitled to relief as a matter of law.  Fed.R.Civ.P. 65(a)(2).

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.; Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488

[3] *See Andre Watson Declaration at ¶* 10.

## II.     LEGAL ARGUMENT

## A. THE DEFENDANTS HAVE ALWAYS TREATED SEVIS TERIMNATION AS A STATUS VIOLATION

The Defendants have submitted the Declaration of Andre Watson in this case as well as numerous other cases around the country under penalty of perjury. The Defendants utilize this declaration to establish and justify that the Plaintiff was terminated based on her alleged criminal history. (Decl. at 4 ¶8). However, without pause, the Declaration also acknowledges that, at the time of the termination, "[t]he disposition of the charge was unknown. (Decl. at 4 ¶7). By Defendants' own admission, no effort was made to ascertain the results of the criminal case nor to allow the Plaintiff an opportunity to show that the case was never prosecuted.

More shockingly, however, the Defendants claim that "terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated STUDENT DOE #1's nonimmigrant status."  (Dec. at 4 ¶10).

This is artful paltering at its absolute best.[4]  While completely true, these statements are misleading and irrelevant. SEVIS is just a database. Termination of SEVIS status does not constitute a termination of status under any statutory or regulatory authority. However, despite the lack of regulatory authority to do so, Defendants have **always** considered a SEVIS termination to constitute a violation of status, and their own outward facing guidance says just

---

[4] Todd Rogers, Richard Zeckhauser, et al, *Artful Paltering:  The Risk and Rewards of Using Truthful Statements to Mislead Others,* Faculty Research Working Paper Series, HARVARD KENNEDY SCHOOL, JOHN F. KENNEDY SCHOOL OF GOVERNMENT, (Sept. 2014).

that.[5]  Historical practice also confirms the same. (Exhibit A, Declaration of Nusha Shishegar, DSO).

Previously, in litigation before the Third Circuit, the Defendants took a position that is the opposite of the legal position they now take in the instant litigation. Previously ICE attested that "Since your SEVIS record has been terminated, you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. citizenship and immigration Services (USCIS) or depart the United States immediately." *Jie Fang v. Director USCIS,* 935 F.3d 172, 177 (3d Cir. 2019). Defendants are now simultaneously messaging that students must leave the United States immediately to avoid removal while at the same time declaring under penalty of perjury that SEVIS termination has no direct legal effect on status—and more disappointingly that there is no harm, no foul. You can just deal with it in removal proceedings or leave. (Opp. at 9). Additionally, ICE has no control over how their sister agency, USCIS adjudicates benefits applications, and a student who can't demonstrate valid SEVIS registration is ineligible for change of status. (Exhibit B, NOID reinstatement request from USCIS dated May 5, 2017, equating SEVIS termination to lack of status; Exhibit C, NOID denying change of status from F-1 to H-1B because of SEVIS termination).

To counter the statements in the Andre Watson declaration, Plaintiff offers the Declaration of Nusha Shishegar, who has served as a primary DSO for 15 years and DSO for 18 years. She reviewed the Watson declaration and states:

> I have read and considered the sworn testimony of Andre Watson, Assistant Director, National Security Division, Homeland Security Investigation, U.S. Immigration and Customs Enforcement, U.S.

---

[5] Department of Homeland Security, Study in the States, *Effects of Termination* (last visited April 24, 2025) available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student

5

>Department of Homeland Security. In particular, I have read and considered the statement from Mr. Watson that "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." In my experience, ICE has always taken the opposite position that terminating a record in SEVIS does result in the termination of an F-1/M-1 student's nonimmigrant status in the United States. The position of Mr. Watson is different than the public position of ICE and all previous statements and guidance I received during my career. The position of Mr. Watson is also discordant with language found in the regulations at 8 CFR 214.2(f) and 8 CFR 214.3(g). A termination of the SEVIS record would naturally terminate a student's F-1/M-1 status and cut off any ability for the student to maintain F-1/M-1 status absent being approved by the USCIS for reinstatement after the USCIS accepts the student's reason for the status violation. Additionally, the F-1/M-1 student would not be eligible for reinstatement if according to the position of Mr. Watson that SEVIS termination does not affect F-1/M-1 status because reinstatement is only available if the student has violated status.
>Furthermore, ICE has notified F-1 students with OPT Employment Authorization Documents (EAD) through the SEVP Portal that their OPT authorization has summarily ended which would not occur if, according to the position of Mr. Watson, that SEVIS termination does not affect F-1 status.
>Moreover, a termination of SEVIS records disallows any student (especially students on CPT or OPT) to continue maintaining status because such students need an active SEVIS record to meet regulatory program reporting requirements.
>ICE indicates that "For DHS to fulfill [its national security] mission, the information contained within SEVIS and the portal must be accurate, complete and up to date. Inaccurate information jeopardizes an international student's ability to legally remain in the United States." Students with a terminated SEVIS record are left with no options: they will not be able to timely meet ICE's numerous reporting requirements through SEVIS which would otherwise be a requirement to maintain lawful status. (Exhibit A at ¶¶ 22-32).

What Plaintiffs contend, and what the Defendants actually did, was terminate Plaintiffs' SEVIS records without basis in law or fact, apparently creating a new SEVIS Termination Reason solely for that purpose, with immediate and severe consequences, including the loss of employment authorization, inability to continue their academic career, inability to travel internationally, and being subject to detention and removal.

## B. LIKELIHOOD OF SUCCESS

### a. DUE PROCESS

Defendants claim that Plaintiff cannot establish a due process claim because there is no property interest in a SEVIS record and even if there were a property interest, existing mechanisms exist to challenge termination through reinstatement or by leaving and obtaining a new visa abroad. (Opp. at 12-13).

The Defendants misconstrue the nature of the Plaintiff's due process claim. Plaintiff is not claiming a property interest in the record itself, but they are claiming a due process right to contest the improper termination of that record. With regard to whether there are existing processes to challenge the reinstatement, the Third Circuit has squarely addressed this issue and has found that SEVIS termination constitutes final agency action and that there are no existing mechanisms to challenge the propriety of the SEVIS terminations through reinstatement and/or removal proceedings, and that Plaintiffs are entitled to due process to challenge the SEVIS terminations. *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement,* 935 F.3d 172 (3d Cir. 2019).

Regardless, the Defendants are incorrect that reinstatement is available. The Plaintiff is in their period of Optional Practical Training and reinstatement is not available once you are no longer fully enrolled in school. 8 C.F.R. §214.2(f)(16)(i)(C). While it is true that Plaintiff may be able to get a visa abroad, the Defendants concede that the Plaintiff needs a valid I-20 from a designated school in order to get an F-1 visa and reenter the U.S. (Opp. At 3). Because Plaintiff has been terminated, they are unable to obtain an I-20. (Exhibit A, Declaration of Nusha Shishegar at 14, 17 and 18). For that reason, this Court must intervene.

b. **ADMINISTRATIVE PROCEDURES ACT CLAIMS**

The Defendant's only argument regarding the Plaintiff's APA claims is a circular argument that the Privacy Act does not apply to nonimmigrants and therefore, because that law does not apply to the Plaintiff, the APA precludes judicial review. (Opp. At 14).

Defendants argue that this Court lacks jurisdiction to hear the Plaintiffs' claims under the Privacy Act, despite the fact that Plaintiffs have not asserted any such claims. (Opp. at 14). Defendants themselves admit that the Privacy Act only applies to citizens or lawful permanent residents of the United States, and not to the Plaintiff, who is an F-1 nonimmigrants. (Opp. at 19).[6]

Even if the Plaintiffs could bring claims pursuant to the Privacy Act, courts have held that the "availability of a Privacy Act suit . . . does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims. *All. for Retired Ams. v. Bessent*, Case No. 25-cv-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025).

First, the Privacy Act is a mechanism by which people may request information in government records about *themselves*, seek to correct such records, or sue over unlawful disclosure of those records to others. 5 U.S.C. §§ 552a(b), (d). The Plaintiff is not seeking to do any of those things but rather seeks to challenge, not a mistake in their records, but the complete

---

[6] Notably, non-U.S. citizens and lawful permanent residents can do some things prohibited to them under the Privacy Act via the Freedom of Information Act (FOIA), 5 U.S.C. § 552(3)(A)(stating requests for information in government records can be made by "any person"), and can sue over violations of the FOIA, *id.* §552(4)(B). The Privacy Act is thus far from being a clear statement that judicial review of unlawful agency action to terminate a SEVIS record is barred.

termination of his SEVIS record. The Privacy Act says nothing about SEVIS records or challenges to SEVIS terminations by U.S. immigration agencies.

The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. That waiver is subject to three limitations: (1) the plaintiffs must seek "relief other than money damages"; (2) the plaintiffs must have "no other adequate remedy"; and (3) the plaintiffs' action must not be "expressly or impliedly forbid[den]" by "any other statute." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704). Plaintiffs' APA claims do not fail because the Privacy Act is neither an "adequate remedy" nor can it "expressly or impliedly forbid" their action, since the Privacy Act does not apply to them on its face—as the Defendants acknowledge.

In order to constitute an "adequate remedy," the alternative must provide the plaintiff with "specific procedures" by which the agency action can receive judicial review or some equivalent. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The adequacy of the alternative is not measured by the relief that the APA would provide, so long as the alternative remedy offers the "same genre" of relief. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). Nonetheless, an alternative remedy will not be adequate "if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (*quoting Bowen*, 487 U.S. at 901).

Plaintiffs' Complaint seeks only declaratory and injunctive relief, while the only relief available under the Privacy Act is monetary compensation for actual damages, and even that limited relief is unavailable to Plaintiffs, who, as the Defendants acknowledge, do not fall within its purview. *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022); *FAA v. Cooper*, 566 U.S.

284, 298 (2012). *Doe v. Noem, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *See also Madan B K, et al v. Noem*, 1:25-cv-00419-JMB-PJG, ECF No. 19, p. 10-11 (W.D. Mich. Apr. 23, 2025) ("However, 'Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA."… Therefore, the Court is not presently persuaded that the Privacy Act expressly or impliedly forbids this Court's review of Plaintiffs' APA claims.")  Defendants' argument thus fails.

Notably, the Defendants failed to argue the substance of any of the Plaintiff's APA claims including the claim that the termination was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. §706(2)(A), (C), (D). Defendants did not address the Plaintiff's claim that the termination was "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. §706(2)(B), or that it targeted particular populations based on their race and national origin.  5 U.S.C.A. § 706 (2)(A), (B), (C).  The Court should find that those claims are likely to succeed.

C. **IRREPARABLE HARM**

The Defendants take a shockingly cavalier approach to the harm that the Defendants' actions have caused the Plaintiff. The Defendants claim that no harm can be alleged because the government has not (yet) taken action to deport the Plaintiff. They nonchalantly claim that the Plaintiff is "free to depart the United States on their own and avoid removal proceedings." (Opp. At 9). They also claim that the mental anguish and economic harm that the Plaintiff has suffered from the loss of their lucrative $100,000 income, as well as the years of investment of time and

10

money into her education and into our U.S. education system and economy, do not constitute irreparable injury.

The Third Circuit disagrees. In a precedential case, the court held that SEVIS termination causes harm. *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement,* 935 F.3d at 186 ("The students are genuinely aggrieved after having their lawful status terminated and a notation of fraud placed on their records, thereby permanently branding each of them with a Scarlett "F.") Similar to the Plaintiffs in *Jie Fang,* the Plaintiff here has been branded as a Scarlett "C" criminal for a case that was never prosecuted. They are in the unfortunate gaslighted position of knowing that this termination has a devastating impact on their life while having the government tell them and this court that there is no harm, and that the termination has no impact.

Defendants cite *First Jersey Secur., Inc. v. Bergen,* 605 F.2d 690, 697 at n. 4 (3d Cir. 1979) to posit that monetary damages don't constitute harm. However, the case is inapposite. In *First Jersey,* the Court was considering irreparable harm in the context of the requirement to exhaust administrative remedies, not in the context of a TRO. While it is true that Plaintiff does face severe economic consequences as a result of Defendants' actions, the economic consequences are just one of their concerns. No amount money can put the Plaintiff back in F-1 status; loss of immigration status is not monetary harm, and it is not speculative here. The lack of status prevents Plaintiff from pursuing their PhD, extending their optional practical training, transferring to another school, or changing status to a different work authorizing visa such as H-1B or O-1. Also, as Defendants concede, Plaintiff is subject to arrest, transfer out of the jurisdiction, detention, and removal, but they discount this harm and expect the Plaintiff to just accept the illegal SEVIS termination and just leaves the U.S.

11

Fortunately, Courts around the country disagree that there is no harm. Since April 7th, over 50 district courts around the country have found irreparable harm and granted TROs for Plaintiffs similar situated.[7]

---

[7] *See Ajugwe v. Noem,* U.S. District Court, Middle District of Florida, 8:25-cv-982 (ECF 7)(ordering Plaintiff SEVIS status restored, prohibiting termination of SEVIS absent a reason under 8 C.F.R. §214.1(d) and absent a hearing; and prohibiting the arrest, detention or transfer of the Plaintiff or the initiation of removal proceedings, declaring that Plaintiff can continue employment and prohibiting any retaliation against the school); *BK et al v. Noem,* US District Court, Western District of Michigan Southern Division, 1:25-cv-00419 (ECF 19); *Bejugam v Lyons*, US District Court, Northern District of Alabama, 2:25-cv-537 (ECF 17) (extending the court's TRO of April 11, 2025 enjoining defendant Lyons from effectuating ICE's termination of plaintiff's SEVIS record and F-1 status through April 22, 2025, the date of the scheduled evidentiary hearing in the case); *Beyhaqi v. Noem,* US District Court for the Southern District of Texas, 4:25-cv-01788 (ECF 7)(prohibiting defendants from terminating SEVIS status, and reinstating SEVIS status effective April 10, 2025, *C.S., et al., v. Noem, et al.*, 2:25-cv-00477, ECF No. 22, W.D. Pennsylvania, April 15, 2025 (granting the TRO in part, ordering the defendants from upsetting the status quo as to "instituting, commencing, or beginning deportation processes" against the plaintiffs, and denying the TRO in part, as to any governmental agency or officer altering plaintiffs' "status"/information in SEVIS); *Chatwani v Noem et al.,* US District Court, Northern District of Illinois, 25-cv-4024 (ECF 10)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction);  *Chen v. Noem,* US District Court Southern District of Indiana, 1:25-cv-00733 (ECF 17)(setting aside the termination of SEVIS status, and enjoining the defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of status); *Chen et al v Noem,* US District Court, Northern District of California, 25-cv-3292 (ECF 18)(enjoining defendants from imposing any legal consequences as a result of the termination); *Doe v. Trump,* US District Court for the District of Massachusetts, 25-cv-10135 (*Doe v. Trump, et al.*, 4:25-cv-03140, ECF No. 16, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants from arresting or incarcerating plaintiff pending resolution of the proceedings or transferring plaintiff outside the jurisdiction of the judicial district); *Doe v Noem*, US District Court, Eastern District of California, 25-cv-1103 (ECF 13) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's SEVIS record; requiring defendants to set aside their SEVIS record termination determination; prohibiting defendants from detaining or removing plaintiff based on the SEVIS termination; and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record); *Doe v Noem*, US District Court, Western District of Washington, 25-00633 (ECF 16) (granting the TRO and ordering defendants to restore the plaintiff's F-1 student record and I-20 in SEVIS and to set aside plaintiff's April 7, 2025 F-1 student record and I-20 termination, and enjoining defendants

12

from terminating plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f), from detaining or transferring plaintiff out of the court's jurisdiction, or ordering the detention or transfer of plaintiff out of the court's jurisdiction, as a result of the termination of his F-1 student record or I-20 in SEVIS on April 7, 2025, and from initiating removal proceedings against or deporting plaintiff on the basis of the April 7, 2025 termination of his F-1 student record or I-20 in SEVIS); *Dogan V Noem*, US District Court, District of Columbia, 25-cv-01130 (ECF 7) (granting the TRO in part and denying in part without prejudice, ordering the defendant to treat the plaintiff as it would have treated the plaintiff prior to the defendant's termination of her SEVIS record, preserving the status quo until a further hearing requiring official testimony from a representative of DHS who can make authoritative representations to the court on behalf of the agency explaining to what impact the agency's SEVIS termination has on the lawful status of students, including the plaintiff, who are studying in the United States, if such terminations were not intended to have the impact that educational institutions are interpreting the agency's action to have (i.e., revocation of SEVIS-terminated students' authorization to lawfully continue their studies or training in the United States), and why the agency has not taken action to communicate that misalignment with the educational institutions hosting these students); *Hinge_V_Lyons* US District Court, District of Columbia 25-cv—1097 (ECF 10, 14)(granting the TRO in part and denying the TRO without prejudice in part, and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying the plaintiff's record in SEVIS solely on the basis of his arrest on July 3, 2024, for a violation of Texas Transportation Code violation that was subsequently dismissed); *Isserdasani v. Noem*, US District Court for the Western District of Wisconsin Case No. 3:25-cv-00283 (ECF 7) (granting the TRO in part, enjoining defendants from terminating plaintiff Isserdasani's F-1 student status records from SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records, including detaining him, and reserving in part as to plaintiff Khademi pending additional briefing on venue); *Jane Doe 1 v Bondi*, US District Court, Northern District of Georgia, 25-cv-01998 (ECF 23) (granting TRO for a period of 14 days and ordering defendants to reinstate plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025); *Jin v Noem*, US District Court, District of Minnesota, 25-cv-1391 (ECF 13) (granting the TRO, ordering the defendants to temporarily set aside their determination to classify plaintiff's F-1 student status as terminated and to reinstate plaintiff's student status in SEVIS backdated to April 8, 2025, and temporarily enjoining defendants from taking any further action to terminate plaintiff's student status and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records, including detaining him, or deporting him); *Lui v. Noem et al.*, US District Court for the District of New Hampshire, 1:25-cv-00133 (ECF 13) (granting the TRO and temporarily enjoining the defendants from terminating plaintiff's F-1 student status in SEVIS and requiring them to set aside their termination determination.); *Mashatti v. Lyons*, US District Court, District of Columbia, 25-cv-01100 (ECF 10) 2025 (granting the TRO and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying plaintiff's SEVIS record solely on the basis of the plaintiff's October 2022 arrest for misdemeanor driving while intoxicated for which charges were later dismissed); *Nali v Noem*, US District Court, Northern District of Georgia, 25-cv-03969 (ECF 21)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction); *Okyem v. Noem* US

District Court Central District of Illinois, 2:25-cv-02120 (ECF 6)(restoring student status in SEVIS, prohibiting termination unless authorized by 8 C.F.R. §214.1(d) and after a hearing, and prohibiting the arrest, detention or transfer of the Plaintiff outside the jurisdiction of the court and from initiating removal proceedings); *Oruganti v Noem* US District Court, Southern District of Ohio, 25-cv-409 (ECF 7) (granting the TRO and ordering the defendants to reinstate the plaintiff's F-1 student status and SEVIS record, enjoining defendants from enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of terminating Plaintiff's F-1 student status or SEVIS record, detaining her, or placing her in removal proceedings, and requiring the posting of a bond in the amount of $1.00); *Patel v. Bondi*, US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101 (ECF 16) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's F-1 student status records in SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records); *Raj v United States DHS*, US District Court for the District of Massachusetts, 25-cv-10911 (ECF 4)(limiting relief to enjoining arrest and moving the person outside the jurisdiction); *Roe and Doe v. Noem*, US District Court for the District of Montana, Case No. 25-cv-40 (ECF 9) (granting TRO; ordering defendants to restore plaintiffs' F-1 student status in SEVIS and set aside the F-1 student status termination determination as to the plaintiffs; and enjoining them from: (1) terminating the plaintiffs' student status in SEVIS absent a valid ground as set forth in 8 C.F.R. § 214.1(d) and an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each plaintiff; (2) arresting, detaining, or transferring or ordering the arrest, detention or transfer of either plaintiff out of the court's jurisdiction without first providing adequate notice to both the court and plaintiffs' counsel as well as appropriate time to contest any such action; and (3) initiating removal proceedings against or deporting either plaintiff on the basis of the termination of their F-1 student status); *S.Y., et al., v. Noem, et al.*, 5:25-cv-03244, ECF No. 13, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants for 14 days from arresting and incarcerating plaintiffs pending resolution of the proceedings pursuant to 5 U.S.C. § 705; transferring plaintiffs outside the jurisdiction of the judicial district pending the resolution of the proceedings pursuant to 5 U.S.C. § 705; and imposing any legal effect that otherwise may be caused by the termination of plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas pursuant to 5 U.S.C. § 705; § 706(2)(A), (*Shandilya v. Noem*, US District Court for the Western District of Pennsylvania, Case 25-cv-477 (ECF 22)(limiting TRO relief to enjoining the initiation of removal proceedings, arrest and moving the person outside the jurisdiction); *Sy v Noem*, US District Court, District of Columbia, 25-cv-03244 (ECF 13) (enjoining defendants from imposing any legal consequences as a result of the termination); *Unknown Party v. Trump*, US District Court for the District of Arizona, 25-cv-00175 (ECF 7) (granting TRO and temporarily enjoining defendants from arresting and detaining plaintiff pending the proceedings, transferring plaintiff away from the jurisdiction of the judicial district pending the proceedings, or removing plaintiff from the United States pending the proceedings and ordering that defendants' actions in terminating plaintiff's SEVIS record shall have no legal effect and shall not obstruct plaintiff in continuing to pursue their academic and employment pursuits that plaintiff is authorized to pursue as an international student in F-1 status); *Wu v Lyons*, US District Court for the Eastern District of New York, 25-cv-1979 (ECF 9)(judge Natasha Merle) (granting the TRO pending further order of court, enjoining defendant from terminating plaintiff Wu's SEVIS record and F-1 visa status and ordering defendant to set aside its decision to terminate plaintiffs' visa statuses

D. **BALANCE OF EQUITIES AND PUBLIC INTEREST**

Defendants argue that the equities tip in favor of the government because the executive has plenary authority over immigration and that an injunction would violate the separation of powers. (Opp. at 22). DHS does not explain how or why this tips the equities in its favor. Defendants claim that the "public interest lies in the Executive's ability to enforce immigration laws." (Opp. at 22). It is for that reason that this court should grant the preliminary injunction. The Defendants have not, in fact, enforced any immigration laws. Rather, they have violated them. Defendants have failed to obey their own regulations regarding when SEVIS can be properly terminated. Plaintiffs concur that there is an interest in the Defendant's ability to "develop" and "administer" a program "to collect information relating to nonimmigrant foreign

---

and plaintiff Wu's SEVIS record); *Zheng v Lyons*, US District Court for the District of Massachusetts, 25-cv-10893 (ECF 8); *Zhou v Lyons*, US District Court, Central District of California, 25-cv-2994 (ECF 19); *Ariwoola v. Noem*, US District Court for the District of South Carolina, 3:25-cv-03313 (ECF 8)(enjoining Defendants from arresting, detaining or transporting Plaintiff outside of the jurisdiction, prohibiting Defendants from giving legal effect to the SEVIS termination and declaring that Plaintiff can continue academic and employment pursuits); *Ajugwe v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00982 (ECF 7); *Daou v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00976 (ECF 11)(ordering Plaintiff SEVIS status restored and setting aside the termination, prohibiting termination absent grounds specified in 8 C.F.R. §214.1(d) and an individualized hearing, prohibiting the arrest, detention or transfer of the plaintiff and the initiation of removal proceedings, and declaring that Plaintiff can continue in his work authorization and prohibiting retaliation against the school); *But see Deore v US Department of Homeland Security,* US District Court, Eastern District of Michigan, 25-cv-11038 (ECF 20) (denying TRO stating "…the balance of factors favors denying the motion at this stage. It is not currently clear that plaintiffs have lost F-1 status or that the SEVIS terminations carry independent consequences. Thus, plaintiffs have not shown a strong likelihood of success on the merits. And the other factors do not sufficiently support granting the motion. Although it is ultimately unclear why DHS would terminate SEVIS records for students who maintain F-1 status, plaintiffs have not, for the reasons explained above, met the standard for the issuance of such an extraordinary remedy."); *Liu v. Noem*, US District Court for the Southern District of Indiana, Case No. 1:25-cv-00716, ECF 24, denying motion for a TRO due to a lack of showing of irreparable harm, because "Plaintiffs have not shown non-speculative harm beyond a potential gap in their educations, which standing alone is generally not irreparable harm.", * 7.  That is not the case here: Plaintiff points to specific non-speculative "loss of a specific job [ ] tied to a specific academic opportunity."

15

students." (Opp. at 22). Plaintiff is in no way attempting to interfere with that mission. But, when that mission leads an agency to engage in a widespread dragnet to terminate the SEVIS status of over 4,700 students without legal authority, and without warning, notice, or an ability to contest the grounds for termination, the agency has overstepped its authority and it is the duty of the other branches of government to intervene. There is nothing efficient about the Defendants' arbitrary and unlawful actions. and the manner in which this has been conducted has demanded the intervention of the Courts. As Judge Wilkinson reminds, "The Executive possesses enormous powers to prosecute and to deport, but with powers come restraints. If today, the Executive claims the right to deport without due process and in disregard of court orders, what assurances will there be tomorrow that it will not deport American citizens and then disclaim responsibility to bring them home?" *Kilmar Armando Abrego Garcia, et al v. Noem,* 8:25-cv-000951-PX (4th Cir. Apr. 17, 2025)(Wilkinson, Circuit Judge). Rather, the public interest is served by ensuring DHS and ICE follow the law, especially where the Plaintiffs were deprived of any pretermination notice or opportunity to respond.

E. **PUBLIC SURETY**

Finally, DHS requests that this Court impose a bond on the Plaintiffs if it decides to grant their motion. But bond is only to be required for "costs and damages" sustained by the non-moving party if they are later found to have been "wrongfully enjoined." Fed.R.Civ.P. 65(c). DHS has not identified any such costs or damages. It further gives no indication of what an "appropriate amount" of bond would be. Further, considering DHS's position that SEVIS termination has no legal consequences, (See Andre Watson declaration), it cannot show that bond in any amount is appropriate. That said, if this Court imposes a bond, the Plaintiffs will take all necessary steps to meet the requirement.

16

For the foregoing reasons, the Court should grant the Plaintiffs' motion for a temporary restraining order. *See* ECF No. 2.

Dated: April 24, 2025,                    Respectfully submitted,

<u>s/ Jeff Joseph</u>

Jeff Joseph
Berry Appleman & Leiden
2400 N. Glenville Drive
Richardson, TX  75082
(720) 273-4647
*Jeff@immigrationissues.com*

Gregory P. Copeland
Law Office of G P Copeland
6565 Spring Brook Avenue,
Suite 8, 195
Rhinebeck, NY 12572
Tel.: (845) 280-6446
g@gpcopeland.com