**BERRY APPLEMAN & LEIDEN**
Jeff Joseph (CO Bar No. 28695) (*pro hac vice pending*)
2400 N. Glenville Drive
Richardson, Texas 75082
(720) 273-4647
Email:  jjoseph@bal.com

*Attorney for Plaintiff*
Student Doe #1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Student DOE #1 | Case No. 25-cv-2825 (MCA) |
| Plaintiff, | |
| v. | |
| Donald J. TRUMP, in his official capacity, President of the United States of America; | |
| John TSOUKARIS, in his official capacity as ICE Enforcement and Removal Operations New Jersey Field Office Director; | **FIRST AMENDED COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and | |
| Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; | |
| Marco Rubio, in his official capacity, Secretary of State | |
| Defendants. | |

Complaint for Declaratory and Injunctive Relief

## **INTRODUCTION**

1.   Pursuant to Rule 15(a)(1) of the Federal Rules and Local Rule 15.1(a), as well as this Court's order (ECF 31), Plaintiff hereby files this first amended complaint for declaratory and injunctive relief under the Administrative Procedures Act to make additional factual allegations and arguments pertinent to the legal claims that have arisen since the filing of the original complaint.

2.   Plaintiff is a student in lawful F-1 status who graduated with a master's degree from a prestigious United States University and who was working, post-graduation, on their Optional Practical Training work authorization.

3.   They are one of approximately 4,000 to 8000 F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE) in the past two months, in an attempt to strip them of their ability to lawfully remain in the United States.

4.   The Student and Exchange Visitor Information Systems ("SEVIS") is a government database administered by the Attorney General in consultation with the Department of State, which tracks international students' compliance with their F-1 status. 8 U.S.C. § 1372.

5.   ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor student status. *See, generally,* 8 C.F.R. §214.3.

6.   On April 9, 2025, SEVP terminated Plaintiff's SEVIS record and marked Plaintiff "Termination Reason:  Other - Individual identified in criminal records check and/or has had

Complaint for Declaratory and Injunctive Relief

their visa revoked. SEVIS record has been terminated." Based on this information, they were told by their school that they were out of status, and they were terminated from their lucrative employment.

7.   Like thousands of others, Plaintiff also logged into her Department of State record and ascertained that their visa had also been revoked.[1] To date, DOS still has not advised Plaintiff that their visa has been revoked, although Plaintiff took steps to independently verify this fact after receiving notice from school officials that their SEVIS record was terminated.

8.   There was no reasoned, individualized, discretionary consideration of the Plaintiff's actual criminal case to determine whether termination of SEVIS registration was appropriate or legal in this matter in violation of 8 C.F.R. §214.1(d). In fact, no criminal case exists. Upon information and belief, this operation was driven by artificial intelligence and the matching of criminal databases against SEVIS records without an individualized assessment of the case.

9.   After losing more than 50 lawsuits in more than 30 courts at the TRO stage, ICE, on April 25, 2025, issued a statement in federal court indicating that it would be reactivating some SEVIS records.

10. Notably, the policy itself says that it is not to be relied upon as legal guidance.

11. In a separate statement from ICE, an ICE spokesperson stated that ICE would not be reactivating any SEVIS records for those students who had their visa revoked by Department of State ("DOS"), even though, upon information and belief, these visa revocations would never have occurred but for the termination of the SEVIS registration by ICE in the first instance.

---

[1] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a.

Complaint for Declaratory and Injunctive Relief

12. On April 26, 2025, ICE issued a new Broadcast message entitled, "SEVIS NOTICE—Policy Regarding Termination of Records." This message provides in part that "If State revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)." This broadcast message was provided to Plaintiff's counsel on May 5th, 2025. (ECF 33). Through this policy, ICE is attempting to do an end-run around their regulatory authority and to create a legislative rule that allows them to do what the regulations specifically prohibit them from doing.

13. Documents produced since that time in other litigation show collusion between ICE and DHS with ICE working with DOS to maximize the impact of SEVIS revocations and visa revocations, all in violation of federal regulations and without any procedural due process.

14. The regulation found at 8 C.F.R. § 214.1(d) plainly provides only the following three instances where ICE may initiate a termination of a SEVIS record: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

15. Visa revocation is not one of the listed reasons for termination under the regulations. *Id.*

16. Defendants did not satisfy any one of the three regulatory conditions and the abrupt notice that Plaintiff is out of status and must leave the country has left them in reasonable fear that they may be arrested, confined, and disappeared to a prison outside the United States even if this violates the law and the United States Constitution. *See Noem v. Garcia*, No. 24A949, 2025 U.S. LEXIS 1456, *3-4 (Apr. 10, 2025), *Sotomayor, J., concurring* ("The only argument the

Complaint for Declaratory and Injunctive Relief

Government offers in support of its request, that United States courts cannot grant relief once a deportee crosses the border, is plainly wrong."), citing *Rumsfeld v. Padilla*, 542 U. S. 426, 447, n. 16, 124 S. Ct. 2711 (2004); *cf. Boumediene v. Bush*, 553 U.S. 723, 732, 128 S. Ct. 2229 (2008).

17. ICE takes the position, in their public facing guidance, that the termination of a SEVIS record effectively ends F-1 student status. *SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 23, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student

18. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiff's student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa only controls a student's ability to enter into the country, not their continued lawful presence once admitted. Plaintiff has been in full compliance with the terms of their F-1 status and has not engaged in any conduct that would warrant termination of their status. Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiff, into abandoning their studies or post-graduate employment and "self-deporting" despite not violating their status. For example, on March 5, 2025, DOS informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html

Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[3]

19. Other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals to the South—in particular, Louisiana—once detained. There have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainee across state lines to detention facilities in Louisiana and Texas.[4] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court.

20. If ICE believes a student is deportable for having a revoked visa or any other reason, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process. It similarly cannot engage in retaliatory arrests and transfers to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

---

[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488

[4] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

Complaint for Declaratory and Injunctive Relief

21. Over the past two months visa revocations and SEVIS terminations have shaken campuses across the country, including New Jersey.[5] The SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

22. The unlawful terminations which resulted in visa revocations, followed by an about-face and sudden reactivations of SEVIS registration (but not visa reactivation), while at the same time implicitly threatening cancellation of reactivations by issuing a "new policy," which allows them to terminate status if visas are revoked (which they now are) continues to cause real confusion, fear, and panic.

23. Plaintiffs seek an immediate order pursuant to the Administrative Procedure Act ("APA") that (1) sets aside the unlawful and unconstitutional terminations; and (2) places Plaintiffs in the exact same legal immigration status they held as of March 25, 2025. 5 U.S.C. § 702, 704, 706(2).

**<u>JURISDICTION</u>**

---

[5] Joanna Gagis, *Why Were Student Visas Revoked for International Students in NJ?,* NJ Spotlight News (April 14, 2025) available at: https://www.njspotlightnews.org/video/why-were-student-visas-revoked-for-international-students-in-nj/
Trevor Hughes, *19 State AGs Ask Federal Judge to Block Trump's International Student Visa Cancellations,* USA Today (April 11, 2025) available at: https://www.usatoday.com/story/news/nation/2025/04/11/attorneys-general-lawsuit-trump-student-visa-cancellations/83048386007/

Complaint for Declaratory and Injunctive Relief

24. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b). An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§ 2201, 2202. The Court also has authority under the APA, 5 U.S.C. §§ 701–06.

25. With limited exceptions, the APA provides district courts with the authority to set aside final agency action. 5 U.S.C. § 706.

26. The termination of a SEVIS record constitutes final agency action for purposes of APA review. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182, 185 (3d Cir. 2019). Plaintiff is not able to obtain review of their SEVIS revocation before an Immigration Judge, and no other forum exists to address these claims. *Darby v. Cisneros,* 509 U.S. 137 (1993).

27. 27.    Applying any statutory provision to curb jurisdiction in this case therefore would deprive Plaintiff of any effective judicial review of their claims and a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603 (1988). Plaintiff does not challenge an underlying order of removal. Plaintiff is challenging Defendants' unlawful termination of their SEVIS and seeks to prevent their unlawful arrest as a result of that termination.

28. Plaintiff is not able to obtain review of their SEVIS revocation before an Immigration Judge. No other forum exists to address these claims.

29. Applying any statutory provision to curb jurisdiction in this case therefore would deprive Plaintiff of any effective judicial review of their claims and a "serious constitutional

Complaint for Declaratory and Injunctive Relief

question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603 (1988).

## VENUE

14. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants are employees or officers of the United States, acting in their official capacity; because the Plaintiff resides within the jurisdiction of the ICE New Jersey Field Office,[6] which is in the jurisdiction of the District of New Jersey; and because Plaintiff resides in the District of New Jersey, and there is no real property involved in this action.

## PARTIES

15. Plaintiff is an international student currently pursuing post-graduate optional practical training and resides in Hudson County, New Jersey. Plaintiff seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or block-listing by third parties.[7]

16. Defendant Donald J. TRUMP is named in his official capacity as the President of the United States of America. In this capacity, he is responsible for the policies and actions of the executive branch, including the U.S. Department of State and U.S. Department of Homeland Security.

17. Defendant John TSOUKARIS is the Field Office Director of ICE, in New Jersey, and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens according to immigration law and oversees custody determinations. In

---

[6] The New Jersey ICE Field Office area of responsibility covers all of New Jersey. https://www.ice.gov/contact/field-offices?office=13
[7] The Plaintiff will separately file a Motion to Proceed under Pseudonym.

Complaint for Declaratory and Injunctive Relief

his official capacity, he is responsible for the enforcement of the immigration laws in New Jersey, including against Plaintiff. ICE is responsible for the termination of Plaintiff's SEVIS record.

18. Defendant Todd M. LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. ICE is responsible for termination of Plaintiff's SEVIS record.

19. Defendant Kristi NOEM is the Secretary of the DHS and is named in her official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In her capacity as Secretary, Defendant Noem has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a); *see also,* 8 U.S.C. §1103(a).

20. Defendant Marco RUBIO is the Secretary of State and has the authority to manage and oversee the Consulates around the world responsible for issuing visas. Secretary Rubio also directs and manages the Visa Office in Washington, D.C. that oversees policy, including changes made to the *Foreign Affairs Manual* used by consular officers to issue, refuse, revoke, and prudentially revoke nonimmigrant visas. Secretary Rubio is also charged, in consultation with the Attorney General and Secretary of Education, to develop and conduct the SEVIS system. 8 U.S.C. §1372. Defendant Rubio is sued in his official capacity.

## **LEGAL BACKGROUND**

Complaint for Declaratory and Injunctive Relief

21. A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay.

22. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (annotated as D/S) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. . *See, Maintaining Student Status,* DHS Study in the States, (last visited April 23, 2025) https://studyinthestates.dhs.gov/students/maintaining-status.

23. SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status. https://sevis.ice.gov/ (last accessed April 23, 2025); 8 U.S.C. §1372 (ordering the Attorney General, in consultation with the Secretary of State and the Secretary of Education, to "develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States.").

24. "The SEVIS record is the definitive record of student or exchange visitor *status* and visa eligibility." 9 F.A.M. §402.5-4(B)(emphasis added).

25. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations. *See SEVIS Termination Reasons*, DHS Study in the States, (last

Complaint for Declaratory and Injunctive Relief

visited Apr. 23, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.

26. Termination can only be based on a student's failure to maintain status. *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 23, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.

27. SEVIS is also the system through which all major actions within the international student lifecycle must pass, including extensions of a course of study, international travel validation, authorization for curricular practical training and STEM optional practical training, changes of major or level, transfers to another institution, authorizations for a reduced course load for a final term in a course of study or for medical or academic reasons, etc.

28. DHS, via ICE, also uses SEVIS to communicate with schools on student records by showing entry data, visa issuance, and certain change of status information. *Id.* ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to thus monitor student status and communicate with academic institutions.

29. Schools use SEVIS to issue an I-20 to a student, who must present it to DOS to obtain a visa to Customs and Border Protection for entry.

30. DOS uses SEVIS information provided by ICE to revoke visas, and in this case, used that information to revoke the Plaintiff's visa and instruct the Plaintiff to leave the United States immediate or face deportation.

31. Students have no direct interaction within SEVIS but depend on an active SEVIS record to attend school, transfer, engage in curricular practical training, work on optional practical training, or change status to another immigration category. 8 C.F.R. § 214.2(f)(10), 8 C.F.R. §

Complaint for Declaratory and Injunctive Relief

214.2(f)(8), 8 C.F.R. § 214.2(f)(6)(iii), 8 C.F.R. § 214.2(f)(7)(iii), 8 C.F.R. §

214.2(f)(1)(iii), & 8 C.F.R. § 214.3(g)(1); https://studyinthestates.dhs.gov/sevis-help-

hub/student-records/completions-and-terminations/terminate-a-student (last accessed April

29, 2025).

    32. Students who enter the U.S. with F-1 visas are subject to an array of regulations. 8

C.F.R. 214.2(f). Once a student is admitted in F-1 status, a student is granted permission to

remain in the United States for the duration of status (D/S) as long as they continue to meet the

requirements established by the regulations governing their visa classification in 8 C.F.R.

§214.2(f) such as maintaining a full course of study, OPT or CPT, or STEM OPT.  *See* 8 C.F.R.

§214.2(f)(6) (defining a full course of study).

    33. The regulations at 8 C.F.R. §214.2(f)(1) establish a procedure by which a foreign

national may pursue his or her course of study as an F-1 nonimmigrant. This federal regulation

requires that an approved school create a Form I-20, Certificate of Eligibility for

Nonimmigrant Student Status, in SEVIS that is issued in the student's name. 8 C.F.R. §

214.2(f)(1)(i)(A)-(B); 8 C.F.R. § 214.2(f)(1)(iii). The regulations further govern participation

in an authorized "practical training" role following the completion of studies. 8 C.F.R. §

214.2(f)(10)(i).

    34. There are two types of practical training programs, curricular practical training, and

optional practical training. Both require that the student has been lawfully enrolled for at least

one academic year on a full-time basis at the school. 8 C.F.R. § 214.2(f)(10).

    35. Curricular Practical Training ("CPT") is any "alternative work/study, internship,

cooperative education, or any other type of required internship or practicum that is offered by

Complaint for Declaratory and Injunctive Relief

sponsoring employers through cooperative agreements with the school" that is an "integral part of an established curriculum."

36. A request for authorization for CPT must be made by the student to the DSO (Designated School Official). "A student may begin curricular practical training only after receiving their Form I-20 or successor form with the DSO endorsement." 8 C.F.R. § 214.2(f)(10)(i).

37. OPT is temporary employment or unpaid internships that is "directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii). A "student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. The student may not begin optional practical training until the date indicated on his or her employment authorization document, Form I-766." *Id.* at 214.2(f)(10)(ii)(A). "A student must initiate the OPT application process by requesting a recommendation for OPT from his or her DSO. Upon making the recommendation, the DSO will provide the student with a signed form I-20 indicating the recommendation." 8 C.F.R. 214.2(f)(11)(i). "The student must properly file an Application for Employment Authorization, Form I-765 or successor form, with USCIS, accompanied by the required fee, and the supporting documents, as described in the form's instructions." 8 C.F.R. §214.2(f)(11)(i)(A)-(B).

38. There are strict regulatory timeframes as to when the OPT or STEM OPT must be filed, *Id.* "A student must have a recommendation from his or her DSO in order to apply for OPT. When a DSO recommends a student for OPT, the school assumes the added responsibility for maintaining the SEVIS record of that student for the entire period of authorized OPT, consistent with paragraph (f)(12) of this section [8 C.F.R. § 214.2(f)]." 8

Complaint for Declaratory and Injunctive Relief

C.F.R. § 214.2(f)(11)(ii). "USCIS will adjudicate a student's Form I-765 or successor form on the basis of the DSO's recommendation and other eligibility considerations." 8 C.F.R. § 214.2(f)(11)(iii).

39. "An F-1 student who is granted employment authorization by USCIS to engage in optional practical training is required to report any change of name or address, or interruption of such employment to the DSO for the duration of the optional practical training. A DSO who recommends a student for OPT is responsible for updating the student's record to reflect these reported changes for the duration of the time that training is authorized." 8 C.F.R.§ 214.2(f)(12)(i).

40. Students may receive one year of post-completion OPT, with the possibility of a 24-month extension if the student possesses a degree in the field of science, technology, engineering, or mathematics. 8 C.F.R. § 214.2(f)(10)(ii)(C).

41. "During post-completion OPT, F-1 status is dependent upon employment. Students may not accrue an aggregate of more than 90 days of unemployment during any post-completion OPT period described in 8 CFR 274a.12(c)(3)(i)(B). Students granted a 24-month OPT extension under paragraph (f)(10)(ii)(C)(2) of this section may not accrue an aggregate of more than 150 days of unemployment during a total OPT period, including any post-completion OPT period described in 8 CFR 274a.12(c)(3)(i)(B) and any subsequent 24-month extension period." 8 C.F.R. § 214.2(f)(10)(ii)(E).

42. Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa. 8 C.F.R. § 214.2(f)(5)(iv).

Complaint for Declaratory and Injunctive Relief

43. If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States. *Id.*

44. A student who "fails to maintain a full course of study without the approval of the DSO [Designated School Official] or otherwise fails to maintain status" must depart the United States immediately or seek reinstatement. *Id.*

45. 45.    Under 8 C.F.R. § 214.3(g)(2), DSOs must report through SEVIS to SEVP when a student fails to maintain status.

46. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

47. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f).

48. In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

49. With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses do not meet this threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted

Complaint for Declaratory and Injunctive Relief

use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

50. The second category, titled "termination of *status"* is applicable to all nonimmigrants. 8 C.F.R. §214.1(d)(emphasis added).

51. DHS's ability to terminate status can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot unilaterally terminate nonimmigrant status. *Jie Fang v. United States Immigr. & Customs Enf't*, 935 F.3d 175, 185 n. 100 (3d Cir. 2019).

52. Significantly, the regulations do not provide that visa revocation is a ground for termination of student status. Accordingly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.

53. The *Foreign Affairs Manual* outlines three instances where Consular Officers have the authority to revoke visas: "(1) Unavailable; (2) (U) The individual is not eligible for the visa classification (this includes ineligibility under INA 214(b)); (3) (U) The visa has been physically removed from the passport in which it was issued; or (4) (U) The individual is subject to an IDENT Watchlist record in System Messages for an arrest or conviction of driving under the influence, driving while intoxicated, or similar arrests/convictions (DUI) that occurred within the previous five years, pursuant to 9 FAM 403.11-5(B) paragraph c, below." 9 FAM 403.11-3(A).

Complaint for Declaratory and Injunctive Relief

54. Prior to April 29, 2025, Consular Officers were instructed not to revoke a visa in circumstances in which all Plaintiffs find themselves.

55. Specifically, Consular Officers had been instructed that: "a. (U) You do not have the authority to revoke a visa based on a suspected ineligibility or based on derogatory information that is insufficient to support an ineligibility finding, other than a revocation based on driving under the influence (DUI). A consular revocation must be based on an actual finding that the individual is ineligible for the visa; b. (U) Under no circumstances should you revoke a visa when the individual is in the United States, or after the individual has commenced an uninterrupted journey to the United States, other than a revocation based on driving under the influence (DUI). Outside of the DUI exception, revocations of individuals in, or *en route* to, the United States may only be done by the Department's Visa Office of Screening, Analysis, and Coordination (CA/VO/SAC)." 9 FAM 403.11-3(B).

56. Further, a revocation is not authorized where the arrest has "already been addressed within the context of a visa application, i.e., the individual has been through the panel physician's assessment due to the arrest." 9 FAM 403.11-5(B) (U).

57. On April 29, 2025, after much litigation and disclosures about DOS activities in the entire SEVIS termination debacle, DOS changed the Foreign Affairs Manual as it relates to visa revocations and added three new "Unavailable" sections and two "Unavailable" subsections. On information and belief, these sections relate directly to the types of revocations suffered by Plaintiff. See 9 FAM 403.11-5(C), updated April 29, 2025.

58. The 2015 version of the FAM (before it became unavailable) provided: "If a visa has been revoked and you subsequently determine that the reason for revocation  has been overcome and the alien is no longer ineligible, and that the visa has not been physically

Complaint for Declaratory and Injunctive Relief

cancelled, then the visa should be reinstated in accordance with the appropriate procedure as indicated below, and, an all applicable cases, the procedures listed below should be taken promptly.  Posts should submit CLOK removal requests for any revocation-related entries (or contact the Department for entries with DPT refusal sites) and contact the CA Service Desk for removal of the red REVOKED banner from any applicable NIV records." 9 FAM 403.11-6(B).

59. ICE affirmatively states that the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.

https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

60. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country, and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been admitted into the United States, because the student is permitted to continue the authorized course of study; U.S. Dept. of State Guidance Directive 2016-03 (Sept. 2, 2016), *available at*

https://j1visa.state.gov/wp-content/uploads/2016/09/2016-03-GD-Visa-Revocation-FINAL-Sept-2016.pdf.

61. DHS' internal policy guidance similarly affirms that "some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. "**[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.** *"See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), *Available online at*: https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf (emphasis added).

Complaint for Declaratory and Injunctive Relief

62. Despite decades of detailed policy outlined above, ICE has now issued new SEVP Guidance that, in effect, reverses the policy without any reasoned consideration or formal rulemaking.

63. While a visa revocation *can* be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. *See* 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).

64. The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status. 8 C.F.R. 1003.18(d)(ii)(B). Only when a final removal order is entered would status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

65. The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal. *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019); *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024).

66. The termination of a SEVIS record constitutes final agency action for purposes of APA review. *Fang,* 935 F.3d at 185.

Accordingly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country, and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been admitted into the United States, because the student is permitted to continue the authorized course of study. ICE Policy Guidance 1004-

Complaint for Declaratory and Injunctive Relief

04 –Visa Revocations (June 7, 2010), available at

https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

68. The termination of a SEVIS record constitutes final agency action for purposes of APA

review. *Fang*, 935 F.3d at 185.

## **FACTUAL ALLEGATIONS**

69.    Plaintiff is currently pursuing post-graduate optional practical training, which is authorized through their F-1 student status, in Jersey City, New Jersey. They are from a country in Asia and have valid work authorization through 2026.

70.    Plaintiff first came to study in the United States on a student visa in 2021 when they arrived in New Jersey to begin pursuing their master's degree at a college or university located in New York. After earning their master's degree, they continued their post-graduate optional practical training in January of 2023 and have been employed with the same employer since that time. Plaintiff has complied with all the requirements of their visa and of the educational institution in which they are enrolled.

71.    Plaintiff has maintained their status as a student and remains in good standing at their respective academic institution.

72.    Plaintiff does not have a conviction for a crime of violence. *See* 18 U.S.C. §16.

73.    Plaintiff was inspected and admitted to the United States.

74.    Plaintiff has not engaged in any significant political activity.

75.    On  April 10, 2025, Plaintiff received notice from the college or university where they are enrolled that their SEVIS status was terminated.

76.    ICE did not revoke a previously granted waiver under 8 U.S.C. §1182(d)(3) or (4).

Complaint for Declaratory and Injunctive Relief

77.    Congress did not introduce a private bill to confer lawful permanent residence on Plaintiff.

78.    Prior to terminating SEVIS records for Plaintiff, DHS did not publish notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

79.    According to the school's officials, the reason listed was that Plaintiff had been identified in a criminal records check. Specifically, Plaintiff was advised that the reason listed for their SEVIS record termination was "Other – Individual identified in criminal records check and/or has had their visa revoked."

80.    School officials informed plaintiff that they discovered that Plaintiff's SEVIS account was terminated. The school itself did not terminate Plaintiff's SEVIS status.

81.    Plaintiff is unaware of the factual basis for the termination of their SEVIS status.

82.    Additionally, Plaintiff logged into the Department of State website to ascertain their visa status and confirmed that their F-1 visa was also revoked on April 9, 2025.

83.    Plaintiff's only criminal history is a minor municipal disorderly persons arrest. Although Plaintiff was charged with the disorderly persons offense in the municipal court of Jersey City, they were never convicted because the prosecutor dismissed the charges. The dismissed disorderly persons prosecution does not render Plaintiff inadmissible to or deportable from the United States.

84. Through their F-1 student status, Plaintiff is authorized for post-graduate employment through their school on Optional Practical Training (OPT). Plaintiff has an excellent job as a risk analyst and was earning upwards of $100,000 per year. Their employer had entered them in the H-1B lottery and was willing to continue their employment with the hopes of

Complaint for Declaratory and Injunctive Relief

sponsoring them for a longer-term work status.  These plans, however, have been disrupted due to the interruption and uncertainty of their academic timeline since his SEVIS record was terminated. Once the employer was told that the student's SEVIS status was terminated, they were terminated from their position.

85. Plaintiff also has a long-term partner who is a lawful permanent resident, and they live together in Jersey City. The gap in SEVIS status will prevent the Plaintiff from being able to adjust their status in the United States if they gets married to their long-term partner and could result in separation if the Plaintiff must leave the United States and apply for an immigrant visa abroad. Any gap in lawful status would prevent adjustment of status. *See* 8 U.S.C. §1255(c); 8 C.F.R. §1245.1(b)(5).

86. Since they received notice of their SEVIS termination, Plaintiff has been experiencing elevated levels of stress and anxiety. They are unsure of what will happen to them, and they fear the effect incarceration or deportation would have on their partner.

87. Upon information and belief, the SEVIS terminations of 1000s of students was based on a rushed project entitled the "Student Criminal Alien Initiative."  This initiative deployed as many as 20 officers and contractors to utilize a criminal database and then run the names of 1.3 million students through the database for "hits."  The initial search identified 6,400 individuals with strong biographic identifiers that matched them to individuals in SEVIS.[8]  The DOS then used the information to revoke the visas of 1000s of students.

88.    ICE's en masse SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, Plaintiff's college was not given any advanced warning or

---

[8] *See*, https://www.politico.com/news/2025/04/29/immigration-foreign-students-00317437; https://apnews.com/article/international-student-visa-f1-sevis-status-716ce8e67e2c3093eba4092e57ba1612; https://www-nbcnews-com.cdn.ampproject.org/c/s/www.nbcnews.com/news/amp/rcna203685

further explanation for the termination of Plaintiff's SEVIS status. Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.[9]

88.89.   As of this date, more than 30 district courts ordering more than 50 temporary restraining orders to maintain the status quo and, in some cases, restore a student's status because the mass termination of SEVIS was not done in accordance with law. https://www.vnews.com/Federal-judge-reverses-student-status-revocation-for-Dartmouth-student-60542604 (last accessed April 16, 2025); *Zhuoer Chen v. Noem*, 25-cv-03292-SI, 2025 U.S. Dist. LEXIS 75047, *16 (N.D. Cal. Apr. 18, 2025) (related case); *Doe v. Noem*, 2:25-cv-00633-DGE, 2025 U.S. Dist. LEXIS 73660 (N.D. Cal. Apr. 17, 2025) (related case).

49. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Administrative Procedure Act**

*(Arbitrary, Capricious, and Unlawful Agency Action)*

89.90.  Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

90.91.     Under §706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of

---

[9] *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System,* Inside Higher Ed, April 5, 2024, https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system

statutory right; . . . [or] without observance of procedure required by law." 5

U.S.C. §706(2)(A), (C)-(D).

91.92.    Defendants have no statutory or regulatory authority to terminate

Plaintiff's SEVIS record or status which constitutes final agency action. *See Jie Fang*,

935 F.3d 182 ("[t]he order terminating these students F-1 visas marked the

consummation of the agency's decision-making process and is therefore a final order.")

This is true even if DOS has revoked Plaintiff's F-1 visa (which they have not received

any notice of). Additionally, nothing in Plaintiff's criminal history or other history

provides a basis for termination.

92.93.    Plaintiff maintained status while they were a student, including tie in

OPT. 8 C.F.R §214.2(f).

93.94.    Defendants initiated the termination of Plaintiff's SEVIS records

without acting in accordance with the notice requirements of 8 C.F.R. §214.1(d).

94.95.    Defendants' arbitrary, capricious, and unlawful action required the

Plaintiff to stop working on his OPT and foreclosed his opportunity to transfer schools

or change status within the United States.

95.96.    Defendants' unlawful action subjected Plaintiff to the risk of

incarceration and was coordinated to cause the revocation of Plaintiff's visa and

exposed him to risk of arrest, detention, transfer, and deportation.

96.97.    Defendants enacted a coordinated policy *sub silentio,* that departed from

prior policy without notice of disclosure of any reasoning.

97.98.    Then, on April 29, 2025, Defendants issued a new policy again without

notice or disclosure of any reasoning.

Complaint for Declaratory and Injunctive Relief

98.99.    A visa revocation should not, legally, impact a student's immigration *status* in the United States, yet such a revocation will be treated by ICE in a manner that constructively terminates the Plaintiff's status by cutting off the ability to work, to study, and to change immigration status within the United States.

99.100.    It further creates a self-fulfilling prophecy by which the Plaintiff essentially *must* violate their status, as they no longer are able to comply with the terms of 8 C.F.R. §214.2(f) without the SEVIS record that allows for them to participate and continue in their F-1 student activities.

100.101.    All of this, with no notice, and no opportunity to be heard on the issue that is underlying the SEVIS termination.

101.102.    This new policy additionally constitutes a legislative rule for which notice-and-comment rulemaking was not provided.

102.103.    Further, on information and belief, it was in fact the Department of State that ordered ICE to perform SEVIS terminations, supplanting the agency's role and legal mandate to use the SEVIS system to *track and monitor* F-1 students. *See* 8 U.S.C. §1372; 8 U.S.C. §1761. Notably, neither statutory mandate of 8 U.S.C. §1372 nor §1761 compels DHS to terminate someone from SEVIS should their status be violated—though Plaintiff has not violated their status in any way.

103.104.    The court is in the unfortunate position of playing legal Whack-a-Mole, with ICE presenting new *post hoc* rationalization seemingly every week.

104.105.    Such convenient litigation postures should be rejected by this Court.

*Dept. of Homeland Sec. v. Regents of Univ. of Cal.,* 591 US 1 (2020).

105.106.    "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221, 136 S. Ct. 2117 (2016), but "[a]n agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515-16, 129 S. Ct. 1800 (2009).

106.107.    Defendants' coordinated actions were arbitrary, capricious, and unlawful. *Id.* 113. Therefore, each agency action must be set aside including ICE's SEVIS terminations and the State Department's policy choice to revoke visas for students who had SEVIS terminated.

107.108.    ICE and the State Department took different measures to notify academic institutions and students that the students had to leave the United States within days borne from an unlawful agency action.

108.109.    Plaintiff entered on a lawful visa, maintained status, and thus the regulations required Defendants to provide adequate notice prior to cancelling their SEVIS records, 8 C.F.R. § 214.1(d).

109.110.    Defendants' lack of consideration of any relevant facts specific to Plaintiff before making a programmatic determination was arbitrary and capricious and in violation of the APA.

110.111.    The entry of false, derogatory information about Plaintiff without notice was arbitrary, capricious, and not in accordance with law. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

111.112.    The arbitrary, capricious, and unlawful action has resulted in a nationwide panic that has terrified the students and their families because students have

Complaint for Declaratory and Injunctive Relief

been arrested and detained after having SEVIS records terminated. *See, Ozturk v. Trump,* _F.Supp.3d____.2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025). Defendants' termination of Plaintiff's SEVIS  records along with visa revocation is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law. 5 U.S.C. §706(2).

112.113.    Courts will "ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command."  *Bowen v. Michigan Acadmy of Family Physicians,* 476 U.S. 667, 681 (1986).

113.114.    This Court should set aside Defendants' arbitrary, capricious, and unlawful coordinated approach to terminate and invalidate Plaintiff's visa and status.

## SECOND CAUSE OF ACTION

**Administrative Procedures Act and Fifth Amendment Due Process Clause**

*(Action Taken Without Affording Procedural Due Process)*

114.115.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

115.116.    Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

116.117.    Under 5 U.S.C. §706(2)(a), courts must set aside final agency action if it is "contrary to a constitutional right, power, privilege, or immunity."  5 U.S.C. §706(2)(B).

Complaint for Declaratory and Injunctive Relief

117.118.  The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Amdt. 14, §1.

118.119.  The Clause "centrally concerns the fundamental fairness of governmental activity." *Quill Corp. v. North Dakota*, 504 U. S. 298, 312, 112 S. Ct. 1904 (1992), *overruled on other grounds, South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 163 (2018).

119.120.  The Supreme Court has stated that "[d]ue process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975 (1990).

120.121.  The actions of Defendants were anything but fundamentally fair, and due process required more than the students received in this particularly extraordinary situation.

121.122.  To determine what process is constitutionally due, the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976), set forth the following three factor test: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used; third, the value, if any, of additional or substitute procedural safeguards, and finally, the government's interest.

122.123.  Due process provides heightened protection against government interference when certain fundamental rights and liberty interests are involved. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997).

123.124.  Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. *See, e.g.,* 8 C.F.R. §214.2(f),

124.125.  Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international

Complaint for Declaratory and Injunctive Relief

student, Plaintiff has a constitutionally protected property interest in their SEVIS registration and to be free from unlawful conduct, including possible detention and the stigma from being incarcerated without a forum to challenge such conduct. *See Isserdasani v. Noem,* 25-cv-283-wmc (W.D. Wis. Apr. 15, 2025)(granting Temporary Restraining Order and finding property interest in participating in SEVIS); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

~~125.~~126.    Applying the *Matthews* test, Plaintiffs easily satisfy the first hurdles as they had numerous private interests, including an interest in maintaining a valid visa, student status, and their own freedom from detention. *See ASSE Int'l v. Kerry, 803* F.3d 1059 (9th Cir. 2015); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, (2004); *Paul v. Davis*, 424 U.S. 693, 701, 711, 96 S. Ct. 1155 (1976).

~~126.~~127.    Second, the blanket unlawful actions against students demonstrates the risk of an erroneous deprivation of such interest through the procedures used; Defendants coordinated unlawful actions without notice and a meaningful opportunity to be heard risked the deprivation of their interests.

~~127.~~128.    Third, this case involves an undeniable, serious error by the government, not merely a risk of error.

~~128.~~129.    Finally, the due process that must attach is particularly important when issues of criminal ineligibility are at play.  ICE used the NCIC database as the definitive source of information for conducting the *en masse* terminations, and this, alone, violates the law. The FBI states; The FBI says that "…NCIC policy requires that before any user can take official action on

Complaint for Declaratory and Injunctive Relief

active records within the NCIC (e.g., arrest an individual, detain a missing person, seize stolen property, charge an individual with violation of a protection order, deny the purchase of a firearm, deny access to explosives), the user must confirm the validity and accuracy of the record with the agency that submitted the record to the NCIC." 85 Fed.Reg. 37748 (June 24, 2020)

129.130.   Consequently, this case should hold that due process entitles the class of students to a means by which they can correct not only a SEVIS termination, but the coordinated actions of executive agencies, including the State Department, to prevent the error from further propagating through the various agency databases and from causing further injury now and in the future.

130.131.   Because Defendants failed to provide such notice in this instance and acted with callous disregard of the law, they violated Plaintiffs' due process rights under the Fifth Amendment.

131.132.   Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in their SEVIS registration.

132.133.   Approximately thirty district courts have issued approximately 50 TROs in similar cases within the last month, granting relief similar to that requested here. See *Ajugwe v. Noem,* U.S. District Court, Middle District of Florida, 8:25-cv-982 (ECF 7)(ordering Plaintiff SEVIS status restored, prohibiting termination of SEVIS absent a reason under 8 C.F.R. §214.1(d) and absent a hearing; and prohibiting the arrest, detention or transfer of the Plaintiff or

Complaint for Declaratory and Injunctive Relief

the initiation of removal proceedings, declaring that Plaintiff can continue employment and prohibiting any retaliation against the school); *BK et al v. Noem,* US District Court, Western District of Michigan Southern Division, 1:25-cv-00419 (ECF 19); *Bejugam v Lyons*, US District Court, Northern District of Alabama, 2:25-cv-537 (ECF 17) (extending the court's TRO of April 11, 2025 enjoining defendant Lyons from effectuating ICE's termination of plaintiff's SEVIS record and F-1 status through April 22, 2025, the date of the scheduled evidentiary hearing in the case); *Beyhaqi v. Noem,* US District Court for the Southern District of Texas, 4:25-cv-01788 (ECF 7)(prohibiting defendants from terminating SEVIS status, and reinstating SEVIS status effective April 10, 2025, *C.S., et al., v. Noem, et al.*, 2:25-cv-00477, ECF No. 22, W.D. Pennsylvania, April 15, 2025 (granting the TRO in part, ordering the defendants from upsetting the status quo as to "instituting, commencing, or beginning deportation processes" against the plaintiffs, and denying the TRO in part, as to any governmental agency or officer altering plaintiffs' "status"/information in SEVIS); *Chatwani v Noem et al.,* US District Court, Northern District of Illinois, 25-cv-4024 (ECF 10)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction); *Chen v. Noem,* US District Court Southern District of Indiana, 1:25-cv-00733 (ECF 17)(setting aside the termination of SEVIS status, and enjoining the defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of status); *Chen et al v Noem,* US District Court, Northern District of California, 25-cv-3292 (ECF 18)(enjoining defendants from imposing any legal consequences as a result of the termination); *Doe v. Trump,* US District Court for the District of Massachusetts, 25-cv-10135 (*Doe v. Trump, et al.*, 4:25-cv-03140, ECF No. 16, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants from arresting or incarcerating plaintiff pending resolution of the proceedings or transferring plaintiff

Complaint for Declaratory and Injunctive Relief

outside the jurisdiction of the judicial district). *Doe 1  v Trump*, US District Court, District of New Jersey, 25-cv-2825 (ECF 13)(granting the TRO and ordering defendants to restore plaintiff's SEVIS record and status and set aside defendants' termination of plaintiff's SEVIS status and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of defendants' decision to terminate plaintiff's SEVIS records, including arresting, detaining, or removing plaintiff from the court's jurisdiction, or ordering the same, without providing adequate notice to the court and to plaintiff's counsel, as well as sufficient time to contest any such enforcement action); *Doe v Noem*, US District Court, Eastern District of California, 25-cv-1103 (ECF 13) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's SEVIS record; requiring defendants to set aside their SEVIS record termination determination; prohibiting defendants from detaining or removing plaintiff based on the SEVIS termination; and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record); *Doe v Noem*, US District Court, Western District of Washington, 25-00633 (ECF 16) (granting the TRO and ordering defendants to restore the plaintiff's F-1 student record and I-20 in SEVIS and to set aside plaintiff's April 7, 2025 F-1 student record and I-20 termination, and enjoining defendants from terminating plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f), from detaining or transferring plaintiff out of the court's jurisdiction, or ordering the detention or transfer of plaintiff out of the court's jurisdiction, as a result of the termination of his F-1 student record or I-20 in SEVIS on April 7, 2025, and from initiating removal proceedings against or deporting plaintiff on the basis of the April 7, 2025 termination of his F-1 student record or I-20 in SEVIS); *Dogan V Noem*, US District Court,

Complaint for Declaratory and Injunctive Relief

District of Columbia, 25-cv-01130 (ECF 7) (granting the TRO in part and denying in part without prejudice, ordering the defendant to treat the plaintiff as it would have treated the plaintiff prior to the defendant's termination of her SEVIS record, preserving the status quo until a further hearing requiring official testimony from a representative of DHS who can make authoritative representations to the court on behalf of the agency explaining to what impact the agency's SEVIS termination has on the lawful status of students, including the plaintiff, who are studying in the United States, if such terminations were not intended to have the impact that educational institutions are interpreting the agency's action to have (i.e., revocation of SEVIS-terminated students' authorization to lawfully continue their studies or training in the United States), and why the agency has not taken action to communicate that misalignment with the educational institutions hosting these students); *Hinge_V_Lyons* US District Court, District of Columbia 25-cv—1097 (ECF 10, 14)(granting the TRO in part and denying the TRO without prejudice in part, and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying the plaintiff's record in SEVIS solely on the basis of his arrest on July 3, 2024, for a violation of Texas Transportation Code violation that was subsequently dismissed); *Isserdasani v. Noem*, US District Court for the Western District of Wisconsin Case No. 3:25-cv-00283 (ECF 7) (granting the TRO in part, enjoining defendants from terminating plaintiff Isserdasani's F-1 student status records from SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records, including detaining him, and reserving in part as to plaintiff Khademi pending additional briefing on venue); *Jane Doe 1 v Bondi*, US District Court, Northern District of Georgia, 25-cv-01998 (ECF 23) (granting TRO for a period of 14 days and ordering defendants to reinstate plaintiffs'

Complaint for Declaratory and Injunctive Relief

student status and SEVIS authorization, retroactive to March 31, 2025); *Jin v Noem*, US District Court, District of Minnesota, 25-cv-1391 (ECF 13) (granting the TRO, ordering the defendants to temporarily set aside their determination to classify plaintiff's F-1 student status as terminated and to reinstate plaintiff's student status in SEVIS backdated to April 8, 2025, and temporarily enjoining defendants from taking any further action to terminate plaintiff's student status and from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records, including detaining him, or deporting him); *Lui v. Noem et al.*, US District Court for the District of New Hampshire, 1:25-cv-00133 (ECF 13) (granting the TRO and temporarily enjoining the defendants from terminating plaintiff's F-1 student status in SEVIS and requiring them to set aside their termination determination.); *Mashatti v. Lyons*, US District Court, District of Columbia, 25-cv-01100 (ECF 10) 2025 (granting the TRO and ordering the defendant to return the plaintiff's SEVIS record to active status and enjoining the defendant from changing or otherwise modifying plaintiff's SEVIS record solely on the basis of the plaintiff's October 2022 arrest for misdemeanor driving while intoxicated for which charges were later dismissed); *Nali v Noem*, US District Court, Northern District of Georgia, 25-cv-03969 (ECF 21)(limiting TRO relief to enjoining arrest and moving the person outside the jurisdiction); *Okyem v. Noem* US District Court Central District of Illinois, 2:25-cv-02120 (ECF 6)(restoring student status in SEVIS, prohibiting termination unless authorized by 8 C.F.R. §214.1(d) and after a hearing, and prohibiting the arrest, detention or transfer of the Plaintiff outside the jurisdiction of the court and from initiating removal proceedings); *Oruganti v Noem* US District Court, Southern District of Ohio, 25-cv-409 (ECF 7) (granting the TRO and ordering the defendants to reinstate the plaintiff's F-1 student status and SEVIS record, enjoining defendants from enforcing,

Complaint for Declaratory and Injunctive Relief

implementing, or otherwise taking any action or imposing any legal consequences as the result of terminating Plaintiff's F-1 student status or SEVIS record, detaining her, or placing her in removal proceedings, and requiring the posting of a bond in the amount of $1.00); *Patel v. Bondi*, US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101 (ECF 16) (granting the TRO and temporarily enjoining defendants from terminating plaintiff's F-1 student status records in SEVIS and from directly or indirectly enforcing, implementing, or otherwise taking any action imposing any legal consequences as the result of the decision to terminate plaintiff's SEVIS records); *Raj v United States DHS*, US District Court for the District of Massachusetts, 25-cv-10911 (ECF 4)(limiting relief to enjoining arrest and moving the person outside the jurisdiction); *Roe and Doe v. Noem*, US District Court for the District of Montana, Case No. 25-cv-40 (ECF 9) (granting TRO; ordering defendants to restore plaintiffs' F-1 student status in SEVIS and set aside the F-1 student status termination determination as to the plaintiffs; and enjoining them from: (1) terminating the plaintiffs' student status in SEVIS absent a valid ground as set forth in 8 C.F.R. § 214.1(d) and an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each plaintiff; (2) arresting, detaining, or transferring or ordering the arrest, detention or transfer of either plaintiff out of the court's jurisdiction without first providing adequate notice to both the court and plaintiffs' counsel as well as appropriate time to contest any such action; and (3) initiating removal proceedings against or deporting either plaintiff on the basis of the termination of their F-1 student status); *S.Y., et al., v. Noem, et al.*, 5:25-cv-03244, ECF No. 13, N.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants for 14 days from arresting and incarcerating plaintiffs pending resolution of the proceedings pursuant to 5 U.S.C. § 705; transferring plaintiffs outside the jurisdiction of the judicial district pending the resolution of the proceedings pursuant to 5

Complaint for Declaratory and Injunctive Relief

U.S.C. § 705; and imposing any legal effect that otherwise may be caused by the termination of plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas pursuant to 5 U.S.C. § 705; § 706(2)(A), (*Shandilya v. Noem*, US District Court for the Western District of Pennsylvania, Case 25-cv-477 (ECF 22)(limiting TRO relief to enjoining the initiation of removal proceedings, arrest and moving the person outside the jurisdiction); *Sy v Noem*, US District Court, District of Columbia, 25-cv-03244 (ECF 13) (enjoining defendants from imposing any legal consequences as a result of the termination); *Unknown Party v. Trump*, US District Court for the District of Arizona, 25-cv-00175 (ECF 7) (granting TRO and temporarily enjoining defendants from arresting and detaining plaintiff pending the proceedings, transferring plaintiff away from the jurisdiction of the judicial district pending the proceedings, or removing plaintiff from the United States pending the proceedings and ordering that defendants' actions in terminating plaintiff's SEVIS record shall have no legal effect and shall not obstruct plaintiff in continuing to pursue their academic and employment pursuits that plaintiff is authorized to pursue as an international student in F-1 status); *Wu v Lyons*, US District Court for the Eastern District of New York, 25-cv-1979 (ECF 9)(judge Natasha Merle) (granting the TRO pending further order of court, enjoining defendant from terminating plaintiff Wu's SEVIS record and F-1 visa status and ordering defendant to set aside its decision to terminate plaintiffs' visa statuses and plaintiff Wu's SEVIS record); *Zheng v Lyons*, US District Court for the District of Massachusetts, 25-cv-10893 (ECF 8); *Zhou v Lyons*, US District Court, Central District of California, 25-cv-2994 (ECF 19); *Ariwoola v. Noem*, US District Court for the District of South Carolina, 3:25-cv-03313 (ECF 8)(enjoining Defendants from arresting, detaining or transporting Plaintiff outside of the jurisdiction, prohibiting Defendants from giving legal effect to the SEVIS termination and declaring that Plaintiff can continue academic and employment pursuits);

Complaint for Declaratory and Injunctive Relief

*Ajugwe v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00982 (ECF 7); *Daou v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00976 (ECF 11)(ordering Plaintiff SEVIS status restored and setting aside the termination, prohibiting termination absent grounds specified in 8 C.F.R. §214.1(d) and an individualized hearing, prohibiting the arrest, detention or transfer of the plaintiff and the initiation of removal proceedings, and declaring that Plaintiff can continue in his work authorization and prohibiting retaliation against the school); *But see Deore v US Department of Homeland Security,* US District Court, Eastern District of Michigan, 25-cv-11038 (ECF 20) (denying TRO stating "…the balance of factors favors denying the motion at this stage. It is not currently clear that plaintiffs have lost F-1 status or that the SEVIS terminations carry independent consequences. Thus, plaintiffs have not shown a strong likelihood of success on the merits. And the other factors do not sufficiently support granting the motion. Although it is ultimately unclear why DHS would terminate SEVIS records for students who maintain F-1 status, plaintiffs have not, for the reasons explained above, met the standard for the issuance of such an extraordinary remedy."); *Liu v. Noem*, US District Court for the Southern District of Indiana, Case No. 1:25-cv-00716, ECF 24, denying motion for a TRO due to a lack of showing of irreparable harm, because "Plaintiffs have not shown non-speculative harm beyond a potential gap in their educations, which standing alone is generally not irreparable harm.", * 7.   That is not the case here: Plaintiff points to specific non-speculative "loss of a specific job [ ] tied to a specific academic opportunity."

### THIRD CAUSE OF ACTION

**Administrative Procedure Act**

*(Defendants' April 26, 2025 Broadcast Message is an Unlawfully Promulgated Rule).*

Complaint for Declaratory and Injunctive Relief

93.     Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

94.     The APA requires legislative rules to pass through the statutorily prescribed notice-and-comment process. 5 U.S.C. § 553(a)-(c); *Warshauer v. Soli*s, 577 F.3d 1330, 1337 (11th Cir. 2009).

95.     First, the agency must publish a "[g]eneral notice of proposed rulemaking" in the Federal Register. 5 U.S.C. § 553(b).

96.     Second, the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," *id.* § 553(c), then "consider and respond to significant comments received," *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96, 135 S. Ct. 1199 (2015).

97.     Last, when the final version of the rule is promulgated, the agency must include along with it "a concise general statement of [its] basis and purpose." 5 U.S.C. § 553(c).

98.     An agency may only forego notice and comment if the rule is not legislative, but instead qualifies as "interpretative rules," (2) "general statements of policy," or (3) "rules of agency organization, procedure, or practice." *See* 5 U.S.C. § 553(b)(A).

99.     Defendants' April 26, 2025 "Broadcast Message" to all SEVP personnel constitutes a legislative rule that is, as discussed above, inconsistent with existing regulations and effects a drastic shift in existing law or policy from the long-time position of ICE.

100.    The policy's new, substantive requirement to terminate SEVIS, status, and visas purports to provide ICE with unfettered "inherent authority" to terminate an individual's status without regard for whether that individual is complying with their status under 8 C.F.R. §

Complaint for Declaratory and Injunctive Relief

214.2(f) and without regard for the regulatory bases for termination already set forth in 8 C.F.R. § 214.1(d).

101.    DHS identified students with criminal records, referred them to DOS for the purpose of having their visas revoked, and now is trying to hide behind DOS revoking a visa as a basis for SEVIS termination and removal proceedings. When a government agency purposefully works to *manufacture* a reason to remove an immigrant and attempt to hide that reason behind a jurisdiction stripping provision, their maneuvering is in bad faith. DHS's tactic here is merely done to try and dodge review of their unlawful activities, rather than seeking genuine enforcement of the law. Courts can look past the usual rule that blocks them from hearing visa-revocation challenges when those revocations were done in bad faith in order to manufacture a ground of removability that did not otherwise exist. *Geglow v. Uhl,* 238 U.S. 3 (1915) (if the statute defines a ground of inadmissibility or exclusion, there must be a connection between the statute and the facts.); *Khachatryan v. Blinken,* 4 F.4th 841 (9th Cir. 2021)(a refusal to consider evidence and objective unreasonableness is an exception to non-revewiewability); A jurisdiction-stripping bar shouldn't shield agencies when their real aim is to game the system and force an otherwise lawful nonimmigrant lacking grounds of removability into deportation.

102.    This Court should declare this legislative rule ultra vires, unlawful and void.

103.    To the extent Defendants have actually commenced the implementation and enforcement of this policy at the time judgment is entered by this Court, any such enforcement should be held to be in excess of statutory jurisdiction, authority, or limitations, or in short of statutory right, and this Court should "hold unlawful and set aside" the agency actions, findings, and conclusions made pursuant to this new policy,

Complaint for Declaratory and Injunctive Relief

including any SEVIS terminations and ancillary consequences flowing from those terminations, such as loss of OPT work authorization or determinations that an individual has failed to maintain their status. 5 U.S.C. § 706.

## <u>FOURTH CAUSE OF ACTION</u>

**Administrative Procedure Act**

*(Acting in Excess of Statutory Authority—Secretary of State Marco Rubio only)*

104.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

105.    The visa revocations at the direction of Secretary Rubio are "not in accordance with law," "in excess of statutory . . . authority," and "contrary to constitutional right." 5 U.S.C. § 706(2)(A), (B), and (C).

106.    The INA expressly denies the Secretary of State "those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas." 8 U.S.C. § 1104(a),

107.    The undisclosed "Student Criminal Alien Initiative" began with the Secretary of State who acted in concert with DHS. The programmatic coordination to both terminates SEVIS records and prudentially revoke, cancel, or actually revoke the impacted students' visas violated 8 U.S.C. § 1104(a), because it removed the powers, duties, and functions bestowed on consular officers who had granted visas to the students.

108.    Furthermore. the statutory authority to revoke "**a** visa" under 8 U.S.C. 1201(i) speaks in singular terms and plainly confers discretion based upon an individualized determination by a consular officer or the Secretary of State to revoke "**a** visa" after notice of "**such** revocation is communicated to the Attorney General."

Complaint for Declaratory and Injunctive Relief

109.    When congress drafted the statute, they did not provide for or anticipate the mass revocations of thousands of using methods that do not involve an individualized exercise of discretion, but rather contemplated revocation "a visa" or "such visa." 8 U.S.C. § 1201(i) which implies a single visa determination.

110.    Reading the statute to allow for the mass revocations of visas without any form of judicial review, would invalidate the statute as a violation of the non-delegation doctrine and would eliminate the individualized discretion the statute was designed to shield from judicial review.

111.    Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1

112.    The corollary of this grant of power is the non-delegation doctrine, by which Congress "may not transfer to another branch powers which are strictly and exclusively legislative." *Gundy v. United State*s, 588 U.S. 128, 135, 139 S. Ct. 2116, 2123 (2019) (plurality opinion) (quotations omitted).

113.    A federal agency "literally has no power to act . . . unless and until Congress confers power on upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *see also Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (EPA "has no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress"). Despite the Defendants' claim that DHS has "inherent authority" to revoke SEVIS registration, 8 U.S.C. §1372 gives no such authority. DHS cannot use SEVIS in any way it sees fit, especially if it involves activities that are beyond which what SEVIS was created for, namely, collecting, monitoring, and verifying certain information to "carry out the purposes of the program."

Complaint for Declaratory and Injunctive Relief

114.    Congress did not delegate the power of the Secretary of State to simultaneously terminate thousands, or all, nonimmigrant visas.

115.    Had Congress done so, Congress would have violated the non-delegation doctrine by providing the Secretary of State with the unfettered discretion to simultaneously cancel all visas whenever he or she felt the urge to do so.

116.    Although Congress has the authority to confer considerable discretion to agencies, it did not, and could not, delegate the power to revoke all visas upon the Secretary of State because it spoke in singular terms and doing so would provide no intelligible principle to which the Secretary of State would be "directed to conform." *Gundy*, 588 U.S. at 135.

117.    This time it was students, and the next time it could be all visa holders, thereby leaving all visa holders in a constant state of panic. Such unfettered power was not what Congress intended and should be checked by this court.

118.    The INA and Constitution did not confer this executive authority, and the APA provides the court with the authority to constrain the abuse of power.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiff's SEVIS record was arbitrary, capricious, and unlawful;

(3) Vacate and set aside ICE's termination of Plaintiff's SEVIS status and reinstate such status retroactively to the date it was terminated;

Complaint for Declaratory and Injunctive Relief

(4) Amend the SEVIS history so that the SEVIS record of the Plaintiff shows no gap in status;

(5) Declare that the revocation of the Plaintiff's valid visa was unlawful and order the DOS to restore and reinstate the visa *nunc pro tunc* to the preexisting date of expiration;

(6) Order Plaintiff to be placed in the same exact immigration and legal position that the Plaintiff was in prior to March 25, 2025, including the revalidation of their visa.

(7) Order Defendants to accept Plaintiff's application for any extension of Optional Practical Training even if such application is beyond the expiration date of their current work authorization card since Plaintiff may be unable to obtain a new I-20 with a STEM OPT recommendation that shows valid status with no gap in status before the expiration of the card;

(8) Order that Defendants remove any and all false, inaccurate, or defamatory information about Plaintiff entered into their systems of record;

(9) Declare and set aside as unlawful the Defendants' April 26, 2025, policy permitting termination of SEVIS records in the event of a visa revocation;

(10) Enjoin Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from their alleged disorderly persons charge, the unlawful termination of their SEVIS, or the unlawful revocation of their F-1 visa which may have already occurred;

Complaint for Declaratory and Injunctive Relief

(11)    Award reasonable costs and attorney fees under the Equal Access

to Justice Act (EAJA) and/or any other statute or legal authority that authorizes

such an award under the particular circumstances of this case; and

(12)    Grant such further relief as the Court deems just and proper.

Dated May 9, 2025,                    Respectfully Submitted,


/s/ Jeff Joseph
Jeff Joseph
Berry Appleman & Leiden
2400 N. Glenville Drive
Richardson, TX  75082
(720) 273-4647
jeff@immigrationissues.com

Gregory P. Copeland
Law Office of G P Copeland
6565 Spring Brook Avenue, Suite 8, #195
Rhinebeck, NY 12572
Tel.: (845) 280-6446
g@gpcopeland.com
local counsel pursuant to L.Rule 101.1(c)(1)

Complaint for Declaratory and Injunctive Relief